R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone:  310-777-8399
Facsimile:  310-691-1086

Attorneys for Plaintiff,
AUTOMOTIVE DATA
SOLUTIONS, INC.

STEPHEN R. SMITH (*pro hac vice*)
(stephen.smith@cooley.com)
SAMUEL K. WHITT (284770)
(swhitt@cooley.com)
COOLEY LLP
1299 Pennsylvania Ave., NW
Suite 700
Washington, DC 20004-2400
Telephone: (202) 842-7800
Facsimile: (202) 842-7899

MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
SARAH B. MOORE (292974)
(smoore@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants DIRECTED
ELECTRONICS CANADA INC., DEI
HOLDINGS, INC. (AKA DIRECTED
ELECTRONICS, INC.), and
DIRECTED, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMOTIVE DATA SOLUTIONS, INC., a Canada Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTED ELECTRONICS CANADA INC., a Canada Corporation; DEI HOLDINGS, INC. (AKA DIRECTED ELECTRONICS, INC.), a Florida Corporation; DIRECTED, LLC, a Delaware LLC, JIM MINARIK, an individual; KEVIN DUFFY, an individual; ROBERT STRUBLE, an individual; TAREK KUTRIEH, an individual; MINAS MINASSIAN, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS AND COUNTERCLAIMS-IN-REPLY | CASE NO. 2:18-cv-1560-GW-E<br><br>**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL RESPONSES TO DEFENDANTS' INTERROGATORY NOS. 13, 20, 24, DEFENDANTS' REQUESTS FOR PRODUCTION NOS. 5, 12, 15, 39, 44, 115, AND THE DEPOSITION OF FRANCIS LEMAY**<br><br>**Honorable Charles F. Eick**<br>Roybal Federal Building<br>Courtroom 750<br><br>Hearing Date:  August 23, 2019<br>Trial Date: November 5, 2019 |

1
2

TABLE OF CONTENTS

3

I.    INTRODUCTION .................................................................................1

4

  A.  Defendants' Introductory Statement ...................................................1

5

  B.  ADS' Introductory Statement ...........................................................3

II.   SPECIFIC DISCOVERY RESPONSES IN DISPUTE ......................5

6
7

  A.  Discovery Requests Relating To Plaintiff's Research And Development of
Alleged Copyright And Trade Secret Subject Matter ...........................5

8

    1.  REQUEST FOR PRODUCTION NO. 49 .................................5

9

    2.  DEPOSITION OF FRANCIS LEMAY ....................................18

10

  B.  Discovery Requests Relating To Acceptable Reverse
Engineering Activities.......................................................................21

11
12

    1.  INTERROGATORY NO. 13 and 24; Request for
Production Nos. 12 and 115................................................................21

13

  C.  DISCOVERY REQUESTS RELATING TO DAMAGES ...........31

14

    1.  INTERROGATORY NO. 20........................................................31

    2.  REQUEST FOR PRODUCTION NO. 5 ...................................35

15

    3.  REQUEST FOR PRODUCTION NO. 15 .................................40

16

III.  CONCLUSION ................................................................................44

17

  A.  DEI's Conclusion ...........................................................................44

18

  B.  ADS's Conclusion ..........................................................................44

19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)......................................................................42

*Grover Prod. Co. v. Midwest Truck & Auto Parts*, *Inc.*,
   No. CV 18-127-AB (PLAX), 2018 WL 6362640 (C.D. Cal. Oct. 30, 2018).38, 43

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992)..........................................................................19

*Kilmon v. Saulsbury Indus., Inc.*,
   No. MO:17-CV-99, 2018 WL 5800757 (W.D. Tex. Feb. 28, 2018)........27, 38, 42

*Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*,
   No. 18-CV-8273 (DLC), 2019 WL 1620754 (S.D.N.Y. Apr. 16, 2019)..............25

**Statutes**

18 U.S.C. § 1839(3)(A) ......................................................................................25

Cal. Civ. Code § 3426.1(d)..................................................................................25

**Other Authorities**

142 Cong. Rec. S12201, S12213 (daily ed. Oct. 2, 1996) .......................................25

**Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................26

Fed. R. Civ. P. 33(b)(4) ....................................................................................33

Fed. R. Civ. Proc. 34(b)(2)(C)....................................................................27, 38, 42

Pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 37-2.1, Defendants Directed Electronics Canada Inc., DEI Holdings, Inc. (aka Directed Electronics, Inc.), Directed, LLC, Jim Minarik, Kevin Duffy, Robert Struble, Tarek Kutrieh, and Minas Minassian (collectively, "DEI" or "Defendants") and Plaintiff Automotive Data Solutions, Inc. ("ADS" or "Plaintiff") submit the following joint stipulation regarding Defendants' Motion to Compel Responses to Defendants' Interrogatory Nos. 13, 20, and 24; Defendants' Requests for Production Nos. 5, 12, 15, 39, 44, and 115; and the Deposition of Francis Lemay.

Defendants served its letter pursuant to Local Rule 37-1 on June 4, 2019 with respect to Interrogatory Nos. 13, 20, and 24; May 30, 2019 with respect to Requests for Production Nos. 5, 15, 39, 44, and 115; and June 25, 2019 with respect to the deposition of Francis Lemay. The Parties had pre-filing conferences of counsel on Friday, May 31, 2019, Friday, June 7, 2019, Monday, June 10, 2019, and Friday, June 28, 2019. Plaintiff produced additional information on June 7, 2019 and June 11, 2019; served a letter identifying its positions with respect to Defendants' Requests for Production for the first time on June 12, 2019; and served expert reports on June 27, 2019 relevant to these disputes, which have been addressed herein. Defendants now bring this joint stipulation in support of their motion to compel.[1]

I.    **INTRODUCTION**

    **A. Defendants' Introductory Statement**

ADS and DEI are direct competitors in the automotive remote start field. ADS's lawsuit consists of a shotgun of disparate claims such as patent, copyright, and trade secret against not only the corporate DEI entities but also an array of current and former DEI executives. The suit is clearly aimed at altering the

---

[1] All referenced exhibits, including a copy of the order establishing the initial case schedule and any amendments, as required by Local Rule 37-2, are attached to the Declaration of Sarah B. Moore submitted herewith.

competitive balance between the two largest players in the remote start business with ADS frequently employing hyperbolic accusations against Defendants such as "hacking" and "stealing."  Despite broad proclamations of reverse engineering misdeeds, however, ADS was not able to back up its allegations through the discovery process.  Rather than disclose the facts it planned to use as a basis for legal liability, ADS chose instead to prejudice Defendants' defenses through hide-the-ball tactics.  In the face of repeated complaints from Defendants about the deficiencies in their discovery responses, ADS continuously pointed to overbroad accusations and claimed that more discovery was needed.  Discovery closed without ADS ever curing its discovery deficiencies.  ADS then compounded its misuse of the discovery process by serving expert reports that relied on the very same previously undisclosed theories and facts it had refused to produce discovery about.

In particular, ADS's interrogatory and request for production responses failed to disclose essential pieces of discovery impacting all aspects of this case – trade secret, copyright, patent infringement, and damages.  In addition, ADS refuses to make Francis Lemay available for deposition, despite the fact that ADS only revealed facts about his involvement in developing ADS's alleged trade secrets on June 11, 2019, four days after the close of fact discovery, and then relied on the development of those trade secrets in their expert report served June 27, 2019.  The recent expert reports confirm ADS withheld this information so that it could ambush Defendants with new theories for the first time in expert reports, when Defendants have less than four weeks to prepare rebuttal reports.  Defendants are entitled to complete responses to Interrogatory Nos. 13 and 24, Request for Production Nos. 12, 44, and 115, and the deposition of Francis Lemay (trade secrets); Request for Production No. 39 (copyright); and Interrogatory No. 20 and Request for Production Nos. 5, and 15 (damages) now that ADS put the information at issue, or ADS should be precluded from relying on any untimely

produced information.

## B. ADS's Introductory Statement

DEI's motion to compel must be denied because: (1) DEI has failed to be diligent in pursuing the discovery matters raised in this motion; and (2) DEI has not shown that the additional information it seeks is not already satisfied by the extensive discovery DEI has already taken, including: ADS's production of nearly 150,000 pages of documents, the eight depositions of ADS's witnesses, and DEI's two months of code review.

First, DEI was not diligent in taking the discovery that is at issue in this motion. As discussed in detail below, DEI propounded extensive discovery requests on October 31, 2018, including a First Set of Document Requests (nos. 1-105) and a First Set of Interrogatories (nos. 1-14).   (Trojan Decl., ¶2.)  ADS timely answered both sets of discovery requests on November 30, 2018.  (*Id*.)  As such, most of the discovery matters at issue in this motion—specifically, Interrogatory No. 13 and Requests for Production (RFP) Nos. 5, 12, 15, and 49—could have and should have been resolved long before Fact discovery closed on June 7, 2019.  (Dkt. #101.)  It is simply inexcusable that DEI waited more than a month after the close of Fact discovery to raise discovery matters that were covered in its first sets of discovery requests, which ADS answered more than eight months ago.

Almost six months after DEI propounded its first sets of discovery requests, DEI propounded a Second Set of Document Requests (nos. 106-144) and a Second Set of Interrogatories (nos. 15-25) on April 17, 2019.  (Trojan Decl., ¶3.)  ADS answered the second sets on May 17, 2019.  (*Id*.)   Both RFP No. 115 and Interrogatory No. 24 that are raised in this motion could have and should have been propounded earlier, and if DEI had been diligent in doing so, any dispute over these requests could also have been resolved before the close of Fact discovery on June 7, 2019.

As an excuse for its lack of diligence, DEI argues that the matters raised in this

motion are based on documents received and depositions taken at the end of Fact discovery. This excuse is disingenuous because DEI was not diligent in exchanging documents or taking depositions that relate to the matters covered in this motion. It was ADS, as the plaintiff, who pressed the pace of discovery. For instance, on February 5, 2019, ADS emailed DEI that "[w]e would like to get the Protective Order on file by next week so that the parties can begin production." (*Id.*, Ex. 2.) To avoid any delay of discovery, ADS informed DEI on February 15, 2019 that "ADS is prepared to produce and receive documents even without an official protective order . . . " (*Id.*, Ex. 4.) By March 20, one week after the entry of the protective order, ADS had produced a total of 90,868 pages of documents and/or files to DEI. (*Id.*, ¶ 10.) Despite receiving ADS's documents starting in March, DEI waited until now, after the close of Fact discovery, to compel supplemental document production.

In addition to demanding more documents, DEI also seeks to compel the deposition of Francis Lemay. ADS identified Lemay on November 30, 2018 in its response to DEI's First Set of Interrogatories (specifically, nos. 1 and 6, noting that "Francis Lemay developed trade secret for Subaru vehicles"). (Trojan Decl., Ex. 18.) Though DEI has known about Lemay since November of last year, DEI never asked for his deposition.

To excuse its lack of diligence, DEI argues below that "Defendants did not learn facts regarding the relevance of Mr. Lemay's knowledge until the June 11, 2019 deposition of Mr. [Sebastien] Boulais." DEI cannot use Boulais's deposition as an excuse because ADS had offered in February to make Boulais available for deposition. On February 15, 2019, without solicitation from DEI, ADS voluntarily offered dates for all of its key witnesses, including Boulais, asking DEI to "[p]lease let us know as soon as possible when you would like to take the depositions of ADS's witnesses so they can reserve dates and make arrangements accordingly." (*Id.*) Specifically, ADS informed DEI that Boulais was available for deposition from April 1 to April 30, 2019. (Trojan Decl., Ex. 3.) Inexcusably, DEI waited until after Fact

discovery closed to take Boulais's deposition on June 11. (Trojan Decl., ¶6.) Hence, DEI cannot use Boulais's deposition as an excuse to compel Lemay's deposition, especially since DEI knew about Lemay since November 30, 2018.

Second, the Court should deny DEI's motion to compel because DEI has failed to show with specificity that ADS has fallen short of its discovery obligations, or that the additional discovery DEI now seeks is not satisfied by the discovery it has already taken. Over the course of nine months of discovery, DEI propounded 144 document requests, to which ADS produced nearly 150,000 pages of documents. DEI also conducted eight depositions of ADS's witnesses. And DEI's experts reviewed ADS's source code for two months. Given the extensive discovery DEI has already taken, the additional requests that DEI seeks are not warranted. For example, DEI does not explain what additional information it seeks from Lemay that it could not have obtained from the numerous depositions of other ADS engineers, in combination with the tens of thousands of pages of documents that ADS produced and the two months of code review.

In short, for DEI's interrogatories and document requests at issue in this motion, as well as its request to compel Lemay's deposition, DEI has failed to be diligent in conducting the relevant discovery and in following the requirements of L.R. 37 to resolve the issues raised in this motion.

## II. SPECIFIC DISCOVERY RESPONSES IN DISPUTE

### A. DISCOVERY REQUESTS RELATING TO PLAINTIFF'S RESEARCH AND DEVELOPMENT OF ALLEGED COPYRIGHT AND TRADE SECRET SUBJECT MATTER

#### 1. REQUEST FOR PRODUCTION NO. 49

##### a. The Request for Production's Text

Documents and Things sufficient to show the design, development, operation, features, reasons for consumer demand, and sales of the ADS products referenced in the Second Amended Complaint and DEI's Answer and

Counterclaims.

### b.    ADS's Response

ADS incorporates each of its General Objections as if restated in this Response.

ADS objects to this request as vague and ambiguous as the term "reasons for consumer demand" is unclear.

Subject to and without waiving any of the foregoing general or specific objections, ADS will produce non-privileged documents responsive to this request to the extent such documents exist and can be located after a reasonable search.

### c.    Defendants' Argument in Support of Motion to Compel

> **(1)    ADS Improperly Refused to Produce the Types of Documents and Testimony Responsive to RFPs No. 49 That It Now Relies on in Expert Reports**

Despite stating in its responses that it would produce information, as the close of discovery approached ADS changed its mind.  ADS began refusing to identify or produce documents sufficient to describe the development of its alleged copyright(s), copyrightable subject matter, or trade secrets.  For example, Defendants specifically requested in their May 30, 2019 Letter that ADS produce all documents relevant to the work summarized in ADS059611—a spreadsheet that lists ADS's alleged copyrightable subject matter and trade secrets.  (Moore Decl. Ex. 1.)  Sebastien Boulais testified at his deposition that Francis Lemay, Guillaume Verville, Martin Moreau, Sebastien Boulais, Karsten Nohl, Mark Rutledge, and Halim Samahiand were allegedly involved in developing the allegedly copyrighted and trade secret subject matter.  Yet ADS refused to produce documents sufficient to describe the work of the aforementioned individuals on the subject matter identified in ADS059611.

Mr. Boulais also testified that Francis Lemay and potentially others were involved in extracting code from OEM vehicles to develop the alleged trade secrets.

-6-

No documents were produced regarding any of this activity, and, as discussed below, ADS has refused to allow Defendants to take the deposition of Mr. Lemay. During a June 28, 2019 meet and confer with ADS regarding Defendants' motion to compel the deposition of Mr. Lemay, ADS stated that his deposition was not permitted because it was requested after the close of fact discovery. But Defendants did not learn of facts regarding the relevance of Mr. Lemay's knowledge until the June 11, 2019 deposition of Mr. Boulais—which the parties agreed would occur four days after the close of fact discovery.

As another example, on the last day of fact discovery, June 7, 2019, ADS produced two documents describing at a high level the operation of ADS's alleged trade secrets for two vehicles (ADS000141007 and ADS000141333). (Moore Decl. Exs. 2-3) Mr. Boulais confirmed that other documents of this type exist and are in ADS's possession but have not been produced to Defendants. (*See* Moore Decl. Ex. 4, June 11, 2019 Deposition of Sebastien Boulais at 75.)

As a final example, ADS059611 describes reverse engineering work involving the use of IDA Pro and the writing of software based on said reverse engineering work. This work was performed by Guillaume Verville, Thierry Giguere, and Halim Samahi in developing the alleged trade secrets. ADS has not produced documents from the relevant time period for these individuals for this work. (Moore Decl. Ex. 1.)

ADS also failed to confirm its refusal to produce documents responsive to RFP Nos. 49 until June 12, 2019—after the parties' meet and confer, and after the close of fact discovery. (*See* Moore Decl. 5, June 12, 2019 Letter from R. Joseph Trojan.)

While ADS's failure to produce had the potential to be harmless, that changed on June 27, 2019 when ADS served an expert report that put at issue the very same information they refused to produce. ADS's expert attempted to work around ADS's refusal to provide documents by relying on vague conversations with

unnamed engineers:

Defendants are significantly prejudiced by not having the documents to rebut these broad allegations. ADS should not be permitted to refuse to produce documents on the one hand, and then affirmatively seek to introduce the facts most helpful to it through undocumented conversations with experts. Defendants are entitled to a full production of documents relating to the research and development that lead to the subject matter ADS contends are its copyright and trade secrets so that it can examine ADS's expert on the blanket statements above, as well as ADS's witnesses at trial.

### (2)    ADS's Meritless Objections Should be Overruled

Other than incorporating its boilerplate General Objections by reference, ADS did not specifically object to these requests and instead agreed that it would produce such documents. Such boilerplate objections are improper, and the Court should compel production of documents responsive to these requests, including those summarized above.

### d.    ADS's Opposition to DEI's Request for Additional Discovery on "Research and Development" of ADS's Trade Secret and Copyright Subject Matter

### (1)    ADS Has Produced Documents to RFP No. 49

DEI moves to compel additional documents responsive to RFP No. 49, which seeks "Documents and Things sufficient to show the design, development, operation, features, reasons for consumer demand, and sales of the ADS products referenced in the Second Amended Complaint and DEI's Answer and Counterclaims." When the

parties met and conferred on this request, DEI narrowed the scope of RFP No. 49 in

DEI's May 30, 2019 letter specifically to:

> 11.  All internal "Wiki pages"
> 12.  Files and source code relevant to the creation of
>      obfuscations in ADS's code

(Trojan Decl., Ex. 15 at 5/7.)   Based on DEI's narrowing of the request, ADS

supplemented its document production, memorializing on June 12, 2019 that ADS

produced:

> 11.  "Wiki pages" - ADS supplemented with additional
>      documents that are Bates Labeled starting approximately
>      at ADS 000110794.
>
> 12.  Source code relevant to the creation of obfuscations in
>      ADS's code – ADS's source code was made available for
>      DEI's inspection upon its request pursuant to the
>      Protective Order.   Additionally, ADS 000102828 is
>      responsive to DEI's request.

(Moore Decl., Ex. 5 at 3/3.)   In addition to the production of documents, it is also

important to note that ADS made available for DEI's inspection all of ADS's

subversion repository of the source code for the products at issue in this case, which

includes full version data for each product.   (Trojan Decl., ¶24.)

**(2)    The Scope of RFP No. 49 Was Narrowed by DEI**

Despite ADS supplementing production and making available all versions of

its source code for DEI's review, DEI now falsely argues that "ADS began refusing

to identify or produce documents sufficient to describe the development of its alleged

copyright(s), copyrightable subject matter, or trade secrets."   This argument is

unfounded for two reasons: (1) ADS did not refuse to produce documents, and (2)

the information that DEI is now asking for is not based on RFP No. 49 as explained

below.

Given that ADS produced documents for RFP No. 49 as discussed above, it is

notable that DEI does *not* argue that ADS's production of internal "Wiki pages" and "source code relevant to the creation of obfuscations in ADS's code" are deficient. In fact, ADS offered that, "[i]f you believe there are any remaining issues regarding ADS's production of documents, please identify specifically what those issues are and why you believe that the supplemental production is incomplete so that we can address them." (Moore Decl., Ex. 5_at 3/3.) DEI did not request additional documents or indicate that ADS's supplementation was deficient.

In fact, in its original draft of the stipulation that DEI provided to ADS on July 9, DEI did not raise RFP No. 49. (Trojan Decl., ¶22.) Instead, DEI's draft was based on RFP Nos. 39 and 44, which seek documents concerning research and development of ADS's "allegedly copyrighted subject" and "allegedly protectable … trade secret(s)" described in ADS's Second Amended Complaint. (*Id*.) When ADS pointed out that "[t]he May 30 letter does not mention Requests Nos. 39 or 44" (Trojan Decl., Ex. 17),[2] DEI admitted that "Defendants inadvertently referenced RFP Nos. 39 and 44 instead of RFP No. 49 in the draft stipulation."[3] (*Id*., p. 4.)

DEI revised its draft to change RFP Nos. 39 and 44 to RFP No. 49, but without changing the underlying arguments. For example, DEI now seeks "documents

---

[2] By not moving to compel on RFP Nos. 39 and 44, DEI effectively conceded that ADS's production as to those two requests were full and adequate.

[3] ADS also noted that: "The professed mistake is also not credible. DEI sent ADS several letters raising various discovery issues, but it never raised any concerns regarding RFP Nos. 39 and 44. Yet, DEI made extensive arguments in the stipulation on RFP Nos. 39 and 44, but not RFP No. 49. In other words, it was not a matter of an isolated, inadvertent reference. You made pages of arguments based on RFP Nos. 39 and 44, but omitted any discussion of RFP No. 49. It appears, in fact, that DEI intentionally tried to deceive both ADS and the Court on this matter by purposefully omitting the May 30, 2019 letter to the supporting declaration of Sarah Moore. To further the deception, the Moore declaration notably failed to attest to a meet and confer on RFP Nos. 39 and 44, while DEI misleadingly implied in the preamble of the stipulation that the parties had met and conferred by stating that "The Parties had pre-filing conferences of counsel on Friday, May 31, 2019, Friday, June 7, 2019, Monday, June 10, 2019, and Friday, June 28, 2019." (*Id*., p. 1.)

relevant to the work summarized in ADS059611—a spreadsheet that lists ADS's alleged copyrightable subject matter and trade secrets." DEI also seeks "reverse engineering" documents and documents relating to ADS's expert's discussion with engineers. However, such documents do not relate to the "Wiki pages" and source code documents that DEI identified in its May 30 letter for RFP No. 49. In short, DEI has failed to show ADS has failed to produce responsive documents to RFP No. 49.

### (2) DEI Has Not Been Diligent in Written Discovery and Is Not Entitled to Any Relief

Even if the Court were to entertain DEI's arguments despite their disconnect to RFP No. 49, DEI's motion compel as to RFP No. 49 must still be denied because of DEI was not diligent in conducting discovery on the matters raised in this motion.

DEI argues above that "ADS refused to produce documents sufficient to describe the work of the aforementioned individuals on the subject matter identified in ADS059611." This argument is baseless for three reasons. First, ADS supplemented its production of documents related to ADS059611 as memorialized in ADS's June 12, 2019 letter:

> 14. Documents and source code relevant to ADS's R&D work described in the rightmost column of the document Bates-labeled ADS 059611 - In addition to the foregoing, ADS supplemented with additional documents that are Bates Labeled starting approximately at ADS 000143444.

(Moore Decl., Ex. 5: 3/3.)

Second, DEI does not explain how documents concerning to ADS059611 are responsive to RFP No. 49, particularly to "Wiki pages" or source code documents. As DEI does not explain how these types of documents are responsive, there is no basis for supplementation.

Third, DEI was not diligent in conducting discovery on RFP No. 49. DEI propounded RFP No. 49 as part of its first set of document requests on October 31,

2018.  (Trojan Decl., ¶2.)  ADS answered RFP No. 49 on November 30, 2018.  (*Id.*)  To produce confidential documents to RFP No. 49, ADS provided DEI with a draft of a proposed protective order on December 10, 2018.  (Trojan Decl., Ex. 1.)

Having received no response from DEI for two months, ADS sent a letter to DEI on February 5, 2019, noting:

> We sent you a draft of a proposed Protective Order on December 10, 2018, but have not received any response or comments on that draft. Please return the Protective Order with your comments by February 8 or let us know if the proposed Protective Order is agreeable. We would like to get the Protective Order on file by next week so that the parties can begin production.

(Trojan Decl., Ex. 2:  2/2.)   With no agreement on a protective order, ADS offered on February 25 to "produce and receive documents even without an official protective order entered in the case . . ." (*Id.*, Ex. 4.)  DEI rejected ADS's proposal. (*Id.*, Ex. 5.)

It thus became clear to ADS that DEI was simply stalling discovery to prevent the parties from exchanging documents.  Hence, on March 1, 2019 ADS stated:

> If the parties cannot agree on language for a proposed protective order by noon on Wednesday, March 6, ADS proposes that the parties schedule a joint call with Magistrate Eick to discuss the parties' positions on the protective order. ADS would also suggest that the parties provide Magistrate Eick with limited briefing (2-3 pages) regarding their respective positions.

(*Id.*, p. 2/3.)  Still with no agreement on a protective order, on March 6, 2019 ADS summarized DEI's general lack of cooperation:

> Recall that we sent you a draft of a proposed Protective Order (and stipulation for the same) on December 10. We did not receive DEI's redline draft of the Protective Order until more than two months later, on February 11. We proposed changes to your draft on February 15. The parties discussed it on February 22. We did not get your revised draft until yesterday, March 5.

(*Id.*, Ex. 6: 1/3 – 2/3.)

The Court entered the protective order on March 13, 2019. (Dkt. #95.) By March 20, one week after the entry of the protective order, ADS had produced a total of 90,868 pages of documents and/or files to DEI.[4] (Trojan Decl., ¶10.)

DEI did not complain about any deficiencies in ADS's production of documents to RFP No. 49. (*Id.*) On May 30, 2019—*six* months after serving its first set of document requests and one week before the close of Fact discovery—, DEI requested to meet and confer for its motion RFP No. 49. (*Id.*, Ex. 15.) For the first time DEI requested specific documents based on specific search terms.

Based on the DEI's requests for additional documents as described in its May 30 letter, ADS supplemented its production of documents using DEI's search terms, which produced an additional 40,746 pages or files. (Moore Decl., Ex. 5.) As DEI was not cooperative in preparing the protective order and providing search terms for RFP No. 49, DEI cannot demonstrate that it was diligent in conducting discovery as to RFP No. 49.

### (3) DEI Has Not Been Diligent in Scheduling Depositions and Is Not Entitled to Any Relief

As an excuse for not being diligent in conducting discovery on RFP No. 49, DEI argues above that "Defendants did not learn of facts regarding the relevance of Mr. Lemay's knowledge until the June 11, 2019 deposition of Mr. Boulais—which the parties agreed would occur four days after the close of fact discovery." DEI does not explain how this is relevant to RFP No. 49. (DEI is not entitled to Lemay's deposition for the reasons discussed in a separate section below.)

---

[4] DEI did not provide ADS with any search terms for DEI's requests. (Trojan Decl., ¶10.) By contrast, ADS provided a list of 44 search terms including specific terms such as: iDatastart, KLON, Weblink, ALCA, BLADE, AL-CA, HCX, BET or B.E.T., and Crack. (*Id.*, Ex. 8.)

DEI cannot use Boulais's deposition as an excuse for its lack of diligence because on February 15, 2019 ADS had offered Boulais for deposition:

> 1. Frank Barassi: March 27 to 29, April 8 to 11, and April 29 to May 3, 2019;
> 2. Sebastien Boulais: April 1 to April 30, 2019;

(Trojan Decl., Ex. 3.)  Upon entry of the protective order on March 14 (Dkt. #95), ADS again followed up with DEI regarding deposition scheduling:

> Speaking of depositions, we have been requesting the availability of DEI's witnesses for deposition since February 15, 2019, which DEI has still not provided. As we further noted in our telephonic conference on February 22, we stressed the need to start coordinating the deposition of witnesses given the number of potential deponents that are scattered in California and Canada.
>
> Given DEI's continual silence, we were forced to send notices of deposition on February 28. When DEI finally responded and requested the rescheduling of depositions, we obliged.  However, DEI has still not provided dates for its witnesses. (By contrast, ADS provided dates for its witnesses on February 15 and is still waiting for DEI to schedule deposition of ADS's witnesses.)

(*Id*., Ex. 7:  5/6.)

On April 5, 2019, ADS even offered to make its witnesses who reside in Montreal, including Boulais, available for deposition in California.  (*Id*., Ex. 10.) ADS followed up again on April 22, stating:

> We note we have provided you with ADS's availability for a 30(b)(6) over two weeks ago on April 5, 2019. We have also emailed you twice regarding ADS's deposition with no response. Hence, we called this morning and left a voicemail to follow up. Further to our voicemail, we write to request confirmation regarding ADS's 30(b)(6) deposition next week. If you intend on proceeding, we need your confirmation by 2:00pm today by phone so ADS can make the necessary travel plans for deposition.

-15-

(*Id.*, Ex. 11.)  DEI cancelled the depositions proposed for April even though ADS's witnesses offered to travel from Montreal to Southern California for their depositions.  (*Id.*, ¶16.)

On May 10, 2019, ADS requested again whether DEI intended to schedule ADS's 30(b)(6) deposition, "Also let us know about when you want to schedule ADS's 30(b)(6)."  (*Id.*, Ex. 12.)  On May 17, ADS again offered the availability of its witnesses to DEI:

> As we previously informed you, ADS's 30(b)(6) witnesses (Barassi and Boulais) are available in Los Angeles on May 28-29. (Please note that Joe has an 8:30 a.m. hearing on May 28, which will necessitate a later start time.) We cannot guarantee their availability in June if DEI does not proceed on May 28-29.

(*Id.*, Ex. 14.)  DEI eventually scheduled Boulais's deposition for June 11, after discovery cut-off.  (*Id.*, Ex. 16.)

Since DEI was not diligent in taking Boulais's deposition, it cannot use his deposition as an excuse to compel on RFP No. 49.

### (4)    DEI Has Been Unable to Articulate Why ADS's Trade Secret Disclosures Are Deficient and Is Not Entitled to Any Relief

As another basis for its motion to compel, DEI argues:

> As another example, on the last day of fact discovery, June 7, 2019, ADS produced two documents describing at a high level the operation of ADS's alleged trade secrets for two vehicles (ADS000141007 and ADS000141333).  (Moore Decl. Exs. 2-3) Mr. Boulais confirmed that other documents of this type exist and are in ADS's possession but have not been produced to Defendants.

Documents related to ADS000141007 and ADS000141333 are not mentioned anywhere in DEI's May 30 letter on RFP No. 49.   (Trojan Decl., Ex. 15.)  In the May 30 letter, DEI narrowed the scope of RFP No. 49 to "Wiki pages" or source

code documents.  As ADS produced ADS000141007 and ADS000141333, it is not clear what "other documents" DEI is seeking under RFP No. 49.

In any event, DEI cannot argue that it lacks an understanding of ADS's trade secrets under RFP No. 49 because ADS made its trade secret source code available to DEI for review.  DEI's two experts reviewed ADS's source code for almost two months.  DEI does not explain what additional information it is seeking that is not cumulative to the information it already has.

### (5)    DEI Is Not Prejudiced by ADS' Expert Report

DEI argues above that "[w]hile ADS's failure to produce had the potential to be harmless, that changed on June 27, 2019 when ADS served an expert report that put at issue the very same information they refused to produce."

As an initial matter, DEI does not identify why the information in ADS's expert disclosure relates to RFP No. 49.  For example, ADS's expert's statement that "I have been informed by ADS's engineers that the ADS's servers, including the KLON server, implement a number of security features to prevent unauthorized access and detect intrusion" (Moore Decl., Ex. 6, Zeidman Expert Report at ¶ 51) has no relationship to the narrowed scope of RFP No. 49.

Regardless, the information disclosed in ADS's expert report has already been disclosed to DEI.  For example, the fact that ADS's "KLON server[] implement[]s a number of security features to prevent unauthorized access and detect intrusion" is plainly disclosed in ADS's complaint:

> ADS employs numerous safeguards such as: (a) emphasizing to consultants and employees the need to keep the data and programs in the Master Database a secret; (b) requiring, as a condition of entering into a consultant relationship or employment, that all consultants and employees promise not to use or disclose the Master Database except in the performance of their duties for ADS; (c) limiting access and/or restricting access to the Master Database by consultants and employees on a need-

> to know basis; (d) requiring coded passwords to access the
> Master Database on ADS' computer systems; and (e)
> implementing a number of physical and electronic security
> measures, including restricting access to databases and network
> space, assigning passwords and user-level permissions to access
> information on ADS' computer system, servers, and networks.

(*See* Dkt. #54 at ¶27.)  DEI was free to take discovery on ADS's factual allegations, but failed to do so.

Based on the foregoing, DEI's motion to compel supplemental document production responsive to RFP No. 49 must be denied.

## 2.    DEPOSITION OF FRANCIS LEMAY

### a.    DEI Requested the Deposition of Francis Lemay

#### (1)    DEI's Requests for Deposition of Francis Lemay

ADS withheld relevant facts regarding Mr. Lemay's involvement in the development of ADS's alleged trade secrets, as discussed above.  In its responses to Defendants' interrogatories, ADS only briefly mentioned that Mr. Lemay "developed ADS's trade secret for Subaru vehicles" without any elaboration.  (*See* Moore Decl. Ex. 7, ADS's First Supplemental Responses to DEI's Interrogatories, served November 30, 2018, at 5, 16.)  ADS did not reveal any details regarding Mr. Lemay's work on ADS's alleged trade secrets on non-Subaru vehicles until Mr. Boulais's deposition on June 11, 2019.  As discussed above, Mr. Boulais testified at his deposition that Francis Lemay was involved in extracting OEM software from microchips in vehicles as part of ADS's development of its alleged trade secrets associated with Mazda, Nissan, and Subaru vehicles.  (*See* Moore Decl. Ex. 4, June 11, 2019 Deposition of Sebastien Boulais at 54:19–55:11, 60:19–61:5, 67:5–68:12. ADS did not produce any documents related to this work during discovery.)

Defendants requested to take Mr. Lemay's deposition on June 17, 2019, less than a week after the Boulais deposition (after Defendants confirmed that ADS had not produced any documents related to Mr. Lemay's work to develop ADS's

alleged trade secrets).  (*See* Moore Decl. Ex. 8, June 17, 2019 Email from Sam
Whitt to Counsel for ADS.  ADS did not respond to Defendants' request.)
Defendants sent another request via email on June 24, 2019, asking if ADS opposed
the deposition of Mr. Lemay.  (*See* Moore Decl. Ex. 9, June 24, 2019 Email from
Matt Brigham to Counsel for ADS.)  ADS responded on June 25, 2019 as follows:
"As Mr. Lemay's deposition was requested after the close of discovery, ADS will
not be making him available for deposition."  (*See* Moore Decl. Ex. 10, June 25,
2019 Email from Francis Wong to Counsel for DEI.)  Defendants requested to meet
and confer regarding a motion to compel the deposition of Mr. Lemay that same
day.  (*See* Moore Decl. Ex. 11, June 25, 2019 Email from Sam Whitt to Counsel for
ADS.)

     The parties met and conferred on June 28, 2019 regarding Defendants'
motion to compel the deposition of Mr. Lemay.  Defendants explained that they did
not know about the extent of Mr. Lemay's involvement in the development of
ADS's alleged trade secrets until Mr. Boulais's 30(b)(6) deposition testimony.
ADS had not made Mr. Boulais available for deposition until after the close of fact
discovery on June 11, 2019.

     Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order
"may be modified" for "good cause and with the judge's consent."  The "good
cause standard primarily considers the diligence of the [moving] party," permitting
"the district court [to] modify the pretrial schedule if it cannot reasonably be met
despite the diligence of the [moving] party."  *Johnson v. Mammoth Recreations,
Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotation marks omitted).
Defendants were diligent in seeking the deposition of Mr. Lemay less than a week
after learning relevant facts.  Therefore, there is good cause for the court to compel
a deposition of Mr. Lemay limited to his knowledge of ADS's work to develop its
alleged trade secrets.

1
2

### b.      ADS's Opposition to DEI's Request for Lemay's Deposition

3
4
5
6
7

DEI's request to take the deposition of Francis Lemay should be denied for two reasons: (1) DEI was not diligent in seeking Lemay's deposition; and (2) DEI has not shown that Lemay has any information to offer beyond what DEI has already collected from the *eight* other depositions DEI has already taken and the 143,720 pages of documents produced by ADS.  (Trojan Decl., ¶25.)

8
9
10
11
12
13
14
15

First, DEI was not diligent in seeking Lemay's deposition.  As DEI admits, ADS identified Lemay in its Responses to DEI's First Set of Interrogatories, which ADS served on **November 30, 2018**.  (*Id*., Ex. 15.)  DEI argues above that the responses (to Interrogatories Nos. 1 and 6) identifying Lemay lacked details, but DEI never requested additional details about Lemay during the subsequent *seven* months of discovery.  Despite the many months of discovery, *DEI never propounded interrogatories or document requests specifically directed to any topic relating to Lemay*.  (Trojan Decl., ¶26.) *Nor did DEI ever ask to take Lemay's deposition.*  (*Id*.)

16
17
18
19
20

DEI argues above that it was not until the deposition of Sebastien Boulais on June 11, 2019 (after the close of Fact discovery) that it learned "that Francis Lemay was involved in extracting OEM software from microchips" for Subaru vehicles.  As discussed above, on February 15, 2019 ADS had offered its witnesses, including Boulais, for deposition:

21
22
23
24

> Reciprocally, ADS is also prepared to coordinate the depositions of its witnesses as well.  They are currently available as follows:
>
> 1.    Frank Barassi: March 27 to 29, April 8 to 11, and April 29 to May 3, 2019;
> 2.    Sebastien Boulais: April 1 to April 30, 2019…

25
26
27
28

(Trojan Decl., Ex. 3.)  Had DEI taken Boulais's deposition in April when ADS offered him, it could have followed up with Lemay's deposition well before Fact discovery ended on June 7.  Since DEI waited until June 11 to take Boulais's

-20-

deposition, it cannot complain that it learned of Lemay late (even though it had known about Lemay since November 30, 2018). (Trojan Decl., Ex. 18.)

Second, DEI does not explain what information it seeks from Lemay that it cannot obtain from the discovery already taken. DEI has already taken *eight* depositions, including five depositions of ADS's engineers, not to mention ADS's Rule 30(b)(6) deposition. (Trojan Decl., ¶25.) In addition to these depositions, DEI has propounded 25 interrogatories and 144 document requests, to which ADS has produced 143,720 pages of documents. (*Id.*) Moreover, DEI's experts conducted review of ADS's computer code for two months. (*Id.*, ¶24.) In light of all this discovery, there is no demonstrable need for DEI to take Lemay's deposition when that it can obtain the same information from other sources. In particular, DEI does not explain what information it seeks from Lemay that it could not have obtained from Boulais's deposition.

Therefore, DEI's request for Lemay's deposition should be denied because DEI was not diligent in conducting discovery as to Lemay and because it already has relevant information on ADS's trade secrets associated with Mazda, Nissan, and Subaru vehicles.

**B.    DISCOVERY REQUESTS RELATING TO ACCEPTABLE REVERSE ENGINEERING ACTIVITIES**

**1.    INTERROGATORY NO. 13 and 24; Request for Production Nos. 12 and 115**

**a.    Interrogatory No. 13**

**(1)    Text of Interrogatory**

Describe in detail ADS's efforts to reverse engineer, analyze, or investigate any DEI product or technology.

### (2)    ADS's Response

ADS incorporates each of its General Objections as if restated herein. It also objects to the interrogatory to the extent it lacks foundation by assuming ADS reverse engineered, analyzed, or investigated any DEI products or technologies.

ADS further objects to the interrogatory because it seeks information that is not relevant to any party's claim or defense nor is it proportional of the needs of the case because ADS's alleged "reverse engineering" or "investigation" of DEI's product is not relevant to any claims and defenses.

ADS further objects to the interrogatory as overly broad and unduly burdensome to the extent it seeks information about all "DEI product or technology," regardless of whether it is related to this case or not.

### b.    Interrogatory No. 24

### (1)    Text of Interrogatory

Describe in detail every time You, Your employees, or a third party instructed by You or Your employees, downloaded or accessed information from DEI's website, DEI's Key2Go server, or any other DEI server, including but not limited to downloads of Key2Go firmware for purposes of comparing such firmware to ADS firmware.

### (2)    ADS's Response

ADS incorporates each of its General Objections as if restated herein.

ADS objects to this interrogatory on the ground and to the extent it lacks foundation and assumes that ADS instructed its employees to "download[] or access[] information from DEI's website, DEI's Key2Go server, or any other DEI servers."

ADS further objects to this interrogatory as overly broad and unduly burdensome to the extent it seeks facts regarding "every time You, Your

employees, or a third party instructed by You or Your employees, downloaded or accessed information from DEI's website, DEI's Key2Go server, or any other DEI server." ADS further objects to this interrogatory as it is not limited in time.

ADS further objects to this Interrogatory to the extent it seeks information that is not relevant to this investigation nor is it proportional to the needs of the case as whether ADS "downloaded or accessed information from DEI's website, DEI's Key2Go server, or any other DEI server" are not related to the parties' claims or defenses, particularly to DEI's counterclaims of patent infringement.

ADS further objects to this interrogatory on the ground and to the extent it seeks information that is not relevant to the subject matter of this investigation nor reasonably calculated to lead to the discovery of admissible evidence.

### c.    Request for Production No. 12

#### (1)    Text of Request for Production

All Documents and Things concerning ADS's efforts to reverse engineer, analyze, evaluate, or investigate any DEI or OEM vehicle technology or aftermarket vehicle technology, including, but not limited to, Documents showing ADS's access to, analysis of, and incorporation into its own products of any DEI, OEM, or other Third- Party hardware, software, firmware, algorithm, method, process, procedure, keycode, key, cryptkey, or the like.

#### (2)    ADS's Response

ADS incorporates each of its General Objections as if restated in this Response.

ADS objects to this Request to the extent it seeks information subject to attorney-client privilege or work product immunity. ADS also objects to this request to the extent that it is unduly broad and unduly burdensome because the request is not limited to any particular time period.

ADS also objects to this request to the extent that it is unduly broad and unduly burdensome because the request seeks documents relating to vehicle technology not at issue in this case. ADS also objects to this request to the extent that it seeks documents and things that are irrelevant to the parties claims or defenses, nor proportional to the needs of the case because it seeks documents related to all DEI and OEM vehicle technology that may not be at issue in this case.

Subject to and without waiving any of the foregoing general or specific objections, ADS will produce non-privileged documents responsive to this request to the extent such documents exist and can be located after a reasonable search.

### d.    Request for Production No. 115

#### (1)    Text of Request for Production

All Documents and Things regarding any instance when You, Your employees, or a third party instructed by You or Your employees, downloaded or accessed information from DEI's Key2Go or any other DEI server, including but not limited to downloads of Key2Go firmware for purposes of comparing such firmware to ADS firmware.

#### (2)    ADS's Response

ADS incorporates each of its General Objections as if restated in this Response.

ADS objects to this Request as it seeks documents and things that are no relevant to the claims and defenses in this case, nor reasonably calculated to lead to the discovery of admissible evidence. DEI has not made allegations in its counterclaims relating to "instances when [ADS] downloaded or accessed information from DEI's Key2Go or any other DEI server, including but not limited to downloads of Key2Go firmware for purposes of comparing such firmware to ADS firmware."

-24-

e.    **Defendants' Argument in Support of Motion to Compel**

(1)    ADS Improperly Refuses to Respond to Interrogatory Nos. 13 and 24 and Requests for Production No. 12 and 115

Interrogatory Nos. 13 and 24, and Requests for Production 12 and 115, seek information relevant to several of DEI's affirmative defenses.  In addition to DEI's equitable defenses, Interrogatory Nos. 13 and 24 and Requests for Production No. 12 and 115 seek information relevant to the reasonableness of ADS's efforts to maintain the secrecy of its alleged trade secrets.  *See* Cal. Civ. Code § 3426.1(d).  ADS is required to show that it has taken "reasonable measures" to maintain its alleged trade secrets in secrecy.  18 U.S.C. § 1839(3)(A).  The required protection necessary to keep the relevant subject matter secret varies from industry to industry.  "We anticipate that what constitutes reasonable measures in one particular field of knowledge or industry may vary significantly from what is reasonable in another field or industry."  *Xavian Ins. Co. v. Marsh & McLennan Companies, Inc.*, No. 18-CV-8273 (DLC), 2019 WL 1620754, at *5 (S.D.N.Y. Apr. 16, 2019) (quoting 142 Cong. Rec. S12201-03, S12213 (daily ed. Oct. 2, 1996) (Managers' Statement for H.R. 3723, the Economic Espionage Bill)).  As one of three players in the industry, ADS's actions are relevant to what is reasonable in the industry and whether its efforts to maintain its alleged trade secrets are in fact reasonable in view of its own actions.  It is therefore essential to consider the general prevalence of competitive espionage and technical knowhow of competitors when assessing the type of "measures" reasonably necessary to protect an alleged trade secret in a particular industry.

ADS's own expert Robert Zeidman confirms this information is relevant in his expert report "Concerning DEI's Copyright Infringement and Misappropriation of Trade Secrets," served June 27, 2019.  Mr. Zeidman repeatedly cites deposition testimony of *DEI's* employees regarding competitive intelligence efforts for the

proposition that *ADS's* alleged trade secrets were not "generally known" in the
industry and that *ADS* took reasonable efforts to protect its alleged trade secrets.
(*See e.g.* Moore Decl. Ex. 5, Zeidman Expert Report at ¶¶ 85-87 (not reasonably
known); 98-99 (reasonable efforts).)  Not only does ADS's expert Mr. Zeidman
confirm that the behavior of the entities in this three player market are relevant to
the reasonableness of ADS's efforts to keep its trade secrets secret, he relies on it.
Defendants are thus entitled to discovery about the behavior of ADS and what it
considers to be legitimate competitive analysis.

The interrogatories and requests for production at issue are directly relevant
to issues in this case because they seek information and documents related to
ADS's technical knowhow and competitive espionage, as reflective of the overall
landscape of the market for aftermarket automotive electronics.  This is an industry
built on reverse engineering of OEM vehicles, and the inadequacy of ADS's
measures to protect its alleged trade secrets must be measured against this
backdrop.  ADS's refusal to provide interrogatory responses and produce
documents responsive to these requests is therefore improper.  Moreover, ADS
waived its objections to request for production No. 115 by waiting until June 12,
2019—after the close of fact discovery—to inform Defendants that ADS would not
be producing documents responsive to this request.  (*See* Moore Decl. 6, June 12,
2019 Letter from R. Joseph Trojan.)

Further, Interrogatory Nos. 13 and 24, and Requests for Production No. 12
and 115 seek information relevant to the originality of ADS's purported copyright
material.  Any information obtained from DEI products would not constitute
material that is original and copyrightable by ADS.

### (2)    ADS's Objections are Meritless

ADS objects that the interrogatories "lack[] foundation."  This evidentiary
objection is irrelevant.  (*See* Fed. R. Civ. P. 26(b)(1) ("Information within this

scope of discovery need not be admissible in evidence to be discoverable.")  For the
reasons discussed above, ADS's boilerplate relevance objection should be
overruled.  Interrogatory No. 13 properly seeks information relevant to the
reasonableness of ADS's efforts to maintain the secrecy of its alleged trade secrets.
ADS's final objection is unclear, "ADS further objects to the interrogatory as
overly broad and unduly burdensome to the extent it seeks information about all
'DEI product or technology,' regardless of whether it is related to this case or not."
Regardless, Interrogatory Nos. 13 and 24 seek relevant information for the reasons
discussed herein.  ADS should be compelled to provide a response.

With respect to RFP No. 115, ADS objects solely on the basis that DEI has
not asserted counterclaims for trade secret violations against ADS.  However, as
detailed above, the documents that fall under this request are relevant to *ADS's*
claims and whether the measures ADS undertook to protect its trade secrets were
reasonable.  ADS must produce documents responsive to this request because it has
failed to support, and therefore waived, its objections.  *Kilmon v. Saulsbury Indus.,
Inc.*, No. MO:17-CV-99, 2018 WL 5800757, at *4 (W.D. Tex. Feb. 28, 2018)
(holding that objections to requests for production were waived when party failed to
show "how the requested discovery was overly broad, burdensome, or oppressive").

To the extent that the Court does not find ADS's objections to be waived,
Rule 34 provides that objections to RFPs "must state whether any responsive
materials are being withheld on the basis of that objection."  Fed. R. Civ. Proc.
34(b)(2)(C).  ADS's belated response that it would be withholding documents
responsive to this request comes too late, after the fact discovery cutoff, and
therefore should not serve as a basis for ADS to refuse production of responsive
documents.

f.    **ADS's Opposition to Various Discovery Requests re "Reverse Engineering"**

Though it is not clear what specific relief DEI is seeking for these discovery requests, DEI's apparent request for supplemental responses to Interrogatories Nos. 13 and 24 and Requests for Production Nos. 12 and 115 should be denied because: (1) DEI was not diligent in raising these discovery issues; and (2) DEI has not shown that these discovery requests are relevant to any claims or defenses in this case.

1.    **DEI's Lack of Diligence as to Interrogatories Nos. 13 and 24**

DEI was not diligent in in pursuing discovery as to Interrogatories Nos. 13 and 24.

As part of its First Set of Interrogatories, DEI propounded Interrogatory No. 13 on October 31, 2018.  (Trojan Decl., ¶2.)  ADS answered Interrogatory No. 13 on November 30, 2018.  (*Id*.)  Though ADS made clear its objections to Interrogatory No. 13 since last year to DEI, DEI did not express any concern about ADS's response or otherwise asked ADS to supplement its response.

Five months later, DEI propounded Interrogatory No. 24 as part of its Second Set of Interrogatories on April 17, 2019.  (Trojan Decl., ¶3.)  If this interrogatory were important as DEI now contends, it could have and should have propounded the interrogatory earlier.  DEI's delay in propounding Interrogatory No. 24 exemplifies its lack of diligence.

Nonetheless, ADS answered Interrogatory No. 24 on May 17, 2019.  (Trojan Decl., ¶3.)  DEI waited until June 4, three days before the close of Fact discovery, to initiate proceedings under Local Rule 37.   Then DEI waited another month, until July 9, to serve its portion of this joint stipulation on its motion to compel.

DEI's delay as to both Interrogatories Nos. 13 and 24 was inexcusable because DEI had months of Fact discovery but did not diligently pursue the issues raised in these two interrogatories.

### 2. DEI's Lack of Diligence as to Requests for Production Nos. 12 and 115

DEI was also not diligent in pursuing discovery as to the Requests for Production (RFPs) Nos. 12 and 115.

DEI propounded RFP No. 12 on October 31, 2018, which sought information regarding "ADS's efforts to reverse engineer, analyze, evaluate, or investigate any DEI or OEM vehicle technology…" (Trojan Decl., ¶2.) ADS answered RFP No. 12 on November 30, 2018. (*Id.*) Further, ADS was ready to produce documents by mid-February, informing DEI on February 15, 2019 that "ADS is prepared to produce and receive documents even without an official protective order entered in the case . . ."[5] (*Id.*, Ex. 4.) By March 20, one week after the entry of the protective order, ADS had produced a total of 90,868 pages of documents and/or files to DEI. (*Id.*, ¶ 10.) Yet, DEI did not request to meet and confer on ADS's response to RFP No. 12 until June 4, 2019. (*Id.*, ¶ 20.)

Almost six months after DEI propounded RFP No. 12, DEI propounded RFP No. 115 on April 17, 2019. (Trojan Decl., ¶3.) ADS answered RFP No. 115 on May 17, 2019. (*Id.*) RFP No. 115, which sought information regarding any effort by ADS to download or access information from DEI's Key2Go or any other DEI server, could have been propounded at the start of discovery. To compound the delay, DEI waited until July 9, 2019 to serve its portion of this L.R. 37 joint stipulation to compel on Request No. 115.

---

[5] ADS sent DEI a draft of a proposed Protective Order on December 10, 2018. (Trojan Decl., ¶29.) On February 5, 2019, ADS noted that it "ha[s] not received any response or comments on that draft. Please return the Protective Order with your comments by February 8 or let us know if the proposed Protective Order is agreeable. We would like to get the Protective Order on file by next week so that the parties can begin production." (Trojan Decl., Ex. 7.)

In short, for these interrogatories and document requests, DEI failed to be diligent in conducting the discovery and in following the requirements of L.R. 37 to resolve the issues raised in this motion.

### 3. DEI's Interrogatories Nos. 13 and 24 and Requests for Production Nos. 12 and 115 Are Not Relevant to the Claims in the Case

DEI's request for supplemental responses to Interrogatories Nos. 13 and 24 and RFPs Nos. 12 and 115 should be denied because these discovery requests are not relevant to the claims and defenses in this case.

These discovery requests seek information regarding any effort by ADS to reverse engineer DEI's products or access information from DEI's website. These requests are irrelevant to the trade secret, copyright, and patent claims in this case.

As set forth in the ADS's Second Amended Complaint, the crux of ADS's claims against DEI is that DEI stole ADS's trade secrets for vehicle remote starters. (Dkt. #54.) ADS established in discovery that *DEI* hacked into *ADS's* server to take ADS's firmware to compensate for its lack of innovation. (Dkt. #116-1: Expert Report of Robert Zeidman ("Zeidman Rpt.") at ¶¶134-227.) ADS's expert has found ADS's trade secret firmware in DEI's products. (*Id*.)

By contrast, DEI has not asserted any counterclaim that ADS stole DEI's trade secrets. (*Id*.) Specifically, DEI has never alleged that ADS either reverse engineered DEI's products or illegally accessed information from DEI's website. Rather, DEI only counterclaimed that ADS infringed certain of DEI's patents. (Dkt. #59.) DEI's Interrogatories Nos. 13 and 24 and RFPs Nos. 12 and 115 are not relevant to its patent counterclaims.

### 4. These Discovery Requests Are Not Relevant to ADS's Trade Secrets

Unable to argue that Interrogatories Nos. 13 and 24 and RFPs Nos. 12 and 115 are relevant to its patent counterclaims, DEI argues that these discovery requests "are

relevant to ADS's claims and whether the measures ADS undertook to protect its trade secrets were reasonable." The measures that ADS undertook to protect its trade secrets are covered by other discovery requests, which DEI does not challenge because ADS has fully produced documents to show that it took reasonable steps to protect its trade secrets. The measures ADS took to protect its trade secrets are discussed at length in the Zeidman report. (*see e.g.* Dkt. #116-1: Zeidman Rpt. at ¶¶57-64, 70-74, 92-100.)

Regardless, DEI does not explain how these discovery requests, which seek information regarding any effort by ADS to reverse engineer DEI's product or access information from DEI's website, would be relevant to "whether the measures ADS undertook to protect its trade secrets were reasonable." The measures that ADS took to protect its trade secrets are based on ADS's own documents and have nothing to do with DEI's products and website.

In short, the Court should deny DEI's request to compel supplemental responses to Interrogatories Nos. 13 and 24 and RFPs Nos. 12 and 115 because these requests are nothing more than the proverbial "fishing expedition."

## C.    DISCOVERY REQUESTS RELATING TO DAMAGES

### 1.    INTERROGATORY NO. 20

#### a.    The Interrogatory's Text

State Your total revenue, profit, and cost of goods, on a product-by-product basis from sales of each accused product in DEI's infringement contentions including all vehicle remote start modules, 2-way LED remote controllers, and 2-way remote controllers having multiple modulation modes for each year from 2012 through the present.

#### b.    ADS's Response

ADS incorporates each of its General Objections as if restated herein.

-31-

ADS further objects to this request because the interrogatory seeks premature disclosure of expert opinion. The interrogatory also seeks attorney work-product. Insofar as this interrogatory seeks to ascertain the identity, writings, and opinions of plaintiff 's experts who have been retained or utilized to date solely as an advisor or consultant, it is violative of the work-product privilege.

Subject to, and without waiving the foregoing Specific and General objections, ADS states as follows:

ADS will produce documents in lieu of responding to this request.

Supplemental Response:

ADS incorporates each of its General Objections as if restated herein. ADS objects to this interrogatory on the ground that it is premature as discovery is ongoing and DEI is still continuing to produce documents in its possession on a rolling basis that ADS would need to respond to this interrogatory. ADS reserves the right to supplement its response to this interrogatory as additional facts or information become available.

ADS objects to this interrogatory to the extent it requires ADS to disclose confidential trade and business data and/or other non-public, proprietary and confidential information contrary to the protocol provided in the protective order. ADS objects to this interrogatory to the extent it is premature as expert discovery is on-going. ADS will provide its expert report that will be responsive to this interrogatory in accordance with the Court's scheduling order.

Subject to its objections, ADS states as follows: in lieu of providing a response, ADS produced documents with the following bates labels: ADS 102986, ADS 102637, ADS 102638, ADS 102627, ADS 102635, ADS 102636, ADS 102628, ADS 102629, ADS 102630, ADS 102631, ADS 102632, ADS 102633, ADS 102634, ADS 102625, ADS 102626, ADS 058477, ADS 034044, ADS 015538, ADS 056921, ADS 007051-60, ADS 023012; ADS 023013; ADS 028078, ADS 028075; ADS 028069, ADS 028072; ADS 023221, ADS

028131; ADS 013572, ADS 046381, ADS 022872; ADS 028079; ADS 028070, ADS 028073; ADS 028127, ADS 028130, ADS 023220, ADS 046465, ADS 081656, ADS 056821.

### c.    Defendants' Argument in Support of Motion to Compel

### (1)    ADS Refuses to Provide Financial Information

Interrogatory No. 20 seeks information about "total revenue, profit, and cost of goods, on a product-by-product basis from sales of each accused product in DEI's infringement contentions." In response, on the close of fact discovery, ADS identified 40 documents. This improper attempt at a Rule 33(d) response, which does not invoke Rule 33(d), fails to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them." In particular, they do not enable Defendants to assess financial information about the accused products.

### (2)    ADS's Objections Confirm It Seeks to Prevent DEI From Having Sufficient Information For Expert Reports

ADS's objections confirm it seeks prevent DEI from having sufficient information for expert reports. Specifically ADS objects, "ADS further objects to this request because the interrogatory seeks premature disclosure of expert opinion. The interrogatory also seeks attorney work-product. Insofar as this interrogatory seeks to ascertain the identity, writings, and opinions of plaintiff 's experts who have been retained or utilized to date solely as an advisor or consultant, it is violative of the work-product privilege." ADS also untimely objects (*see* Fed. R. Civ. P. 33(b)(4)), "to the extent it is premature as expert discovery is on-going. ADS will provide its expert report that will be responsive to this interrogatory in accordance with the Court's scheduling order."

ADS's opening expert report on damages relies on certain limited ADS financial information that ADS cherry-picked for production and inclusion in its

expert damages analysis.  ADS's failure to respond to Interrogatory No. 20 by providing responsive information about the "total revenue, profit, and cost of goods, on a product-by-product basis" for the accused products deprives DEI of the ability to fully vet (or challenge) the narrow and limited information that ADS relies on as the basis of its expert's damages calculation.  It further deprives DEI of the ability to conduct a fulsome rebuttal analysis regarding damages in this litigation.

ADS's remaining objections are also boilerplate ("ADS objects to this interrogatory to the extent it requires ADS to disclose confidential trade and business data and/or other non-public, proprietary and confidential information contrary to the protocol provided in the protective order") and moot ("ADS objects to this interrogatory on the ground that it is premature as discovery is ongoing and DEI is still continuing to produce documents in its possession on a rolling basis that ADS would need to respond to this interrogatory."). Fact discovery closed the day ADS served its supplemental response.  That ADS's objection indicates its production is 'ongoing' on the close of fact discovery, indicates ADS failed to provide a fulsome response and has in fact not produced and identified relevant information responsive to this interrogatory.  ADS should be compelled to provide a response.

### d.    ADS's Opposition

DEI's request for supplemental responses to Interrogatory No. 20 should be denied because (1) DEI was not diligent in raising these discovery issues, and (2) ADS has provided fully responsive answers and documents.

#### 1.    DEI's Lack of Diligence as to Interrogatory No. 20

DEI was not diligent in moving to compel on DEI's Interrogatory No. 20.  As noted above, DEI propounded Interrogatory No. 20 (First Set) on October 31, 2018, which ADS answered on November 30, 2018.  (Trojan Decl., ¶2.)  For the next seven

months DEI did nothing to pursue discovery on Interrogatory No. 20.  DEI waited until Fact discovery closed to now move to compel on Interrogatory No. 20.

### 2.    ADS Has Fully Responded to Interrogatory No. 20

Interrogatory No. 20 asks for total revenue, profit, and cost of goods of ADS's products accused of infringing DEI's patents.  As set forth above, ADS produced voluminous documents in lieu of offering a written response to this interrogatory.  Notably, DEI does not explain how ADS's production was in any way deficient or what additional information DEI seeks.  Moreover, DEI's own expert has already produced a report on the alleged damages.  DEI does not argue that its expert lacked information to prepare the report.

### 2.    REQUEST FOR PRODUCTION NO. 5

#### a.    The Request for Production's Text

All Documents and Things concerning Your revenues, earnings, or profits including without limitation investor presentations, annual reports, annual statements, corporate statements, financial statements, income statements, balance sheets, budgets, projections, business plans, marketing plans, pro formas, and the like for all time periods beginning from the first year in which You conducted research, development, or sales of the aftermarket automotive electronics at issue in the Second Amended Complaint or DEI's Answer and Counterclaims.

#### b.    ADS's Response

ADS incorporates each of its General Objections as if restated in this Response.

ADS objects to this request as overly broad and unduly burdensome as the request seeks all manner of financial documents, investor presentation, budgets, projections, business plans, marketing plans from the first year in which research

was conducted for the products at issue whether or not those documents are related to the products at issue.

ADS objects to this request to the extent it seeks facts or information that is not or are not relevant to the claims and defenses in this case, nor reasonably calculated to lead to the discovery of admissible evidence, as many of the documents requested are not related to the parties' claims or defenses nor to the products at issue.

ADS objects to this request to the extent it is not proportional to the needs of the case because the burden of the proposed discovery outweighs its likely benefit.

Subject to and without waiving any of the foregoing general or specific objections, ADS has already produced documents Bates labeled ADS 007051-7060 that are responsive to this request.

### c.    Defendants' Argument in Support of Motion to Compel

### (1)    ADS Initially Agreed to But Now Refuses to Produce Documents Responsive to RFP No. 5

Despite indicating that it would produce responsive documents, ADS appears to have produced only a single document in response to this request (ADS007051–60, identified in ADS's response to RFP No. 5). However, Frank Barassi, ADS's CEO and designated Rule 30(b)(6) witness regarding damages, testified that additional damages-related information responsive to this request is maintained and frequently accessed in the ordinary course of business by ADS. (*See* Moore Decl. Ex. 12, June 6, 2019 Deposition of Frank Barassi at 125:16-24, *et seq*.) This information has not been produced to Defendants. The Court should compel ADS to supplement its production and produce this information.

In particular, the Court should compel ADS to supplement its production by producing updated financials through the present date relating to or reflecting ADS's revenues, earnings, profits, sales, cost of goods, financial statements,

income statements, balance sheets, budgets, projections, and any other damages-related information that ADS is currently withholding (hereinafter "Financial Information").  ADS's damages expert relied on the limited financial information cherry-picked for production by ADS in his opening report.  DEI's ability to properly rebut ADS's damages expert's conclusions is severely hampered by ADS's deficient production.  Without the production of responsive ADS documents, DEI lack information it needs to cross-check or rebut ADS's expert's assumptions and calculations.   For example, ADS failed to produce financial documents such as statements of revenues, earnings, or profits (*i.e.,* profit and loss statements, income statements, balance sheets) for several of the last five to seven years.  This information is important to DEI's ability to present a fulsome rebuttal to ADS's damages analysis.

Likewise, ADS's production is missing information that DEI's damages expert could have used in the calculation of reasonably royalty rates for ADS's infringement of DEI's patents.  For example, ADS should produce Financial Information regarding products that implemented the "Virtual Tach Sensing" or "VTS" technology accused of infringing DEI's '185 patent from August 29, 2018 through the date that such functionality was removed from ADS's products (if it was indeed removed as Sebastien Boulais testified at his deposition).  (*See* Moore Decl. Ex. 4, June 11, 2019 Deposition of Sebastien Boulais at 32:17–35:8.)  In addition, ADS should produce Financial Information related to the following remote controller key fobs accused of infringing the '400 and '386 patents from August 29, 2018 through the present date: OBTR1151A, OBTR2352A, TR1110A, TR1150A, TR1150A (KIA), TR1150A (MITSUBISHI), TR1150AK, TR2310A, TR2350AC, TR2350AC (KIA), TR2350AC (MITSUBISHI), TR2350AK, TR2410A, TR2450A, TR2450AE, TR2550A, TR2650A, TR3450AE, and TR3450AF.  Finally, ADS should produce any Financial Information that it intends to rely on for its own damages case as well as any Financial Information related to

products embodying ADS's alleged trade secrets, copyrights, and patent claims.

### (2)   ADS's Meritless Objections Should be Overruled

ADS relies exclusively on nonspecific, boilerplate objections, and has therefore waived any legitimate objection that could have been raised.  For example, ADS states that the request is "overly broad and unduly burdensome," "not reasonably calculated to lead to the discovery of admissible evidence," and "not proportional to the needs of the case" without pointing to anything specific. ADS falsely states that the request seeks information about irrelevant products, but in reality the request is expressly limited to "the aftermarket automotive electronics at issue in the Second Amended Complaint or DEI's Answer and Counterclaims." ADS must produce documents responsive to this request because it has failed to support, and therefore waived, its objections. *Kilmon*, No. MO:17-CV-99, 2018 WL 5800757, at *4 (holding that objections to requests for production were waived when party failed to show "how the requested discovery was overly broad, burdensome, or oppressive").

To the extent that the Court does not find ADS's objections to be waived, Rule 34 provides that objections to RFPs "must state whether any responsive materials are being withheld on the basis of that objection."  Fed. R. Civ. Proc. 34(b)(2)(C).  ADS's response does not comply with this requirement, as ADS does not explain whether documents are being withheld on the basis of any objection. The Court should compel ADS to submit a proper response under Rule 34 and affirmatively state, under penalty of perjury, whether any documents are being withheld on the basis of any of its objections to this request. *See Grover Prod. Co. v. Midwest Truck & Auto Parts*, *Inc*., No. CV 18-127-AB (PLAX), 2018 WL 6362640, at *3 (C.D. Cal. Oct. 30, 2018) (compelling supplemental response to requests for production when party failed to indicate whether documents were being withheld on the basis of objections).

#### d.    ADS's Opposition re Request for Production No. 5

DEI's request for supplemental responses to Request for Production (RFP) No. 5 should be denied because (1) DEI was not diligent in raising these discovery issues, and (2) ADS has produced responsive documents.

### 1.    DEI's Lack of Diligence as to Request for Production No. 5

DEI was not diligent in conducting discovery on RFP No. 5.  As noted above, DEI propounded RFP No. 5 on October 31, 2018. (Trojan Decl., ¶2.)  ADS answered this and other RFPs on November 30, 2018.  (*Id*.)  To these and other requests (including requests relating to the alleged damages), ADS has produced approximately 143,720 pages of documents.  (*Id*., ¶25.)  If DEI believed that ADS's production was deficient as to RFP No. 5 as it argues above, DEI could have and should have raised its concerns sooner so that the parties could timely resolve them.

To excuse its lack of diligence, DEI refers to the depositions of Frank Barassi and Sebastien Boulais to argue that it lacked a complete picture of damages until these depositions were taken at the end of Fact discovery.  However, it is important to note that on <u>February 15</u>, 2019 ADS offered early dates for the deposition of these two witnesses:

> Reciprocally, ADS is also prepared to coordinate the depositions of its witnesses as well.  They are currently available as follows:
>
> 1.    Frank Barassi: March 27 to 29, April 8 to 11, and April 29 to May 3, 2019;
> 2.    Sebastien Boulais: April 1 to April 30, 2019…

(Trojan Decl., Ex. 3.)

DEI waited until the end of Fact discovery (June 7) to take Barassi's deposition on June 6 and Boulais's deposition on June 11.  (Trojan Decl., Ex. 14.)  As such, DEI cannot use these depositions as an excuse for its failure to be diligent in conducting discovery as to RFP No. 5.

Moreover, if DEI wanted additional information to RFP No. 5, DEI had plenty of time to employ the mechanism of L.R. 37 to obtain it.  Again, it is inexcusable that DEI waited until July 9, 2019, more than a month after Fact discovery closed on June 7, to serve its portion of this joint stipulation to compel on a request for document that was propounded in October of 2018.

## 2. ADS Has Fully Responded to Request for Production No. 5

Regardless, DEI has provided fully responsive documents to RFP No. 5, which asks for a laundry list of documents relating to the alleged damages for the "aftermarket automotive electronics at issue."  The documents responsive to RFP No. 5 are cited at length in ADS's and DEI's respective expert reports on damages.  DEI does not explain how ADS's production was in any way deficient or why the additional information DEI seeks would be relevant.  As noted, DEI does not argue that its expert lacked information covered by RFP No. 5 to prepare his report, which has already been submitted.

## 3. REQUEST FOR PRODUCTION NO. 15

### a. The Request for Production's Text

All Documents related to any negotiation, sale, offer for sale, license, offer to license, or transfer of ownership (collectively, "IP agreements") of ADS's alleged trade secrets, alleged copyrights, the ADS Patent, or Related ADS Patents and Applications (collectively, "intellectual property"), including:

(a) all assignments, licenses, offers to license, patent sales, offers to sell, agreements of forbearance, agreements of non-assertion, covenants not to sue, or any other agreement referencing said intellectual property;

(b) the Bates numbers of any related documentation showing the parties and the terms of said IP agreements;

-40-

(c) all Documents identifying the amounts of any license fees, royalty payments, or other compensation at issue in said IP agreements;

(d) all Documents identifying the people involved in offering or negotiating each said IP agreement;

(e) all Documents showing the amount of any actual or expected future sales of any products referenced in said IP agreements; and

(f) all Documents related to Your licensing policies, Your licensing practices, or any established or customary rates for licensing in the field of said intellectual property.

### b.    ADS's Response

ADS incorporates each of its General Objections as if restated in this Response.

ADS objects to this request to the extent it seeks privileged documents that are protected by the Attorney-Client privilege or attorney work-product doctrine such as communications between ADS and its counsel regarding any licensing agreement.

ADS objects to this request as vague and ambiguous because it is unclear what is meant by documents related to "the Bates numbers of any related documentation showing the parties and the terms of said IP agreements."

Subject to and without waiving any of the foregoing general or specific objections, ADS will produce non-privileged documents responsive to this request to the extent such documents exist and can be located after a reasonable search.

### c.    Defendants' Argument in Support of Motion to Compel

#### (1)    ADS Initially Agreed to But Now Improperly Refuses to Produce Documents Responsive to RFP No. 15

This request is directly relevant to the parties' damages allegations in this

case.  *See, e.g., Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116,
1120 (S.D.N.Y. 1970) (listing "[t]he rates paid by the licensee for the use of other
patents comparable to the patent in suit" as a relevant factor to reasonable royalty
calculation).  ADS therefore has no basis to object to producing any relevant
documents related to its licensing practices.

ADS's damages expert relies on certain instances of ADS's sales and
licensing history to calculate his damages demand.  However, ADS's failure to
produce a complete record of its intellectual property sales, negotiations, licenses
and the like, limits DEI's ability to either fully understand the nature and
circumstances of the agreements that ADS's damages expert relies on, or to provide
fully informed rebuttal positions.  The Court should compel production of these
documents.

### (2)    ADS's Meritless Objections Should be Overruled

ADS relies exclusively on nonspecific, boilerplate objections, and has
therefore waived any legitimate objection that could have been raised.  For
example, ADS states that the request is "vague and ambiguous" as to the phrase
"the Bates numbers of any related documentation showing the parties and the terms
of said IP agreements" without explaining why the phrase is vague or ambiguous
and despite the fact that the term "IP agreements" is expressly defined in the
request itself.  ADS must produce documents responsive to this request because it
has failed to support, and therefore waived, its objections.  *Kilmon*, No. MO:17-
CV-99, 2018 WL 5800757, at *4 (holding that objections to requests for production
were waived when party failed to show "how the requested discovery was overly
broad, burdensome, or oppressive").

To the extent that the Court does not find ADS's objections to be waived,
Rule 34 provides that objections to RFPs "must state whether any responsive
materials are being withheld on the basis of that objection."  Fed. R. Civ. Proc.
34(b)(2)(C).  ADS's response does not comply with this requirement, as ADS does

-42-

not explain whether documents are being withheld on the basis of any objection. The Court should compel ADS to submit a proper response under Rule 34 and affirmatively state, under penalty of perjury, whether any documents are being withheld on the basis of any of its objections to this request. *See Grover Prod. Co.*, No. CV 18-127-AB (PLAX), 2018 WL 6362640, at *3 (compelling supplemental response to requests for production when party failed to indicate whether documents were being withheld on the basis of objections).

### d.   ADS's Opposition

DEI's request for supplemental responses to Request for Production (RFP) No. 15 should be denied because (1) DEI was not diligent in raising these issues during discovery, and (2) ADS has made responsive production.

### 1.   DEI's Lack of Diligence as to Request for Production No. 15

DEI was not diligent in moving to compel on RFP No. 15. As noted above, DEI propounded RFP No. 15 on October 31, 2018 and ADS answered it on November 30, 2018. (Trojan Decl., ¶2.) DEI argues above that ADS's objections are meritless. If DEI disagreed with ADS's objections or not satisfied with ADS's production, then DEI could have and should have expressed its concerns sooner. More specifically, DEI had months to comply with the requirements of L.R. 37. As with the other discovery issues raised herein, it is inexcusable that DEI waited until July 9, 2019, more than a month after Fact discovery closed on June 7, to serve its portion of this joint stipulation to compel on RFP No. 15.

### 2.   ADS Has Fully Responded to Request for Production No. 15

DEI argues above that "ADS's failure to produce a complete record of its intellectual property sales, negotiations, licenses and the like, limits DEI's ability to either fully understand the nature and circumstances of the agreements that ADS's

-43-

damages expert relies on, or to provide fully informed rebuttal positions." However, DEI offers no citation to the record to support this argument, much less explain what additional information ADS is expected to produce. For this reason alone, DEI's request to compel must be denied because DEI has failed to show that ADS's production in response to RFP No. 15 has been deficient.

## III.    CONCLUSION

### A.    DEI's Conclusion

The Court should compel ADS to supplement its responses to DEI's Interrogatory Nos. 13, 20, and 24 and produce additional documents, source code, or other information responsive to DEI's Requests for Production Nos. 5, 12, 15, 39, 44, and 115, as discussed above. The Court should also compel the deposition of Francis Lemay.

### B.    ADS's Conclusion

Based on the foregoing, the Court must deny DEI's motion to compel ADS to supplement its responses to DEI's Interrogatory Nos. 13, 20, and 24 and produce additional documents, source code, or other information responsive to DEI's Requests for Production Nos. 5, 12, 15, 39, 44, and 115, as discussed above. The Court must deny DEI's motion to compel the deposition of Francis Lemay.

1

2                                          Respectfully submitted,

3    Dated: July 23, 2019                   TROJAN LAW OFFICES

4
                                           */s/* Joseph Trojan
5                                          R. Joseph Trojan (137067)
6                                          (trojan@trojanlawoffices.com)
                                           Dylan C. Dang (223455)
7                                          (dang@trojanlawoffices.com)
8                                          Francis Wong (284946)
                                           (wong@trojanlawoffices.com)
9                                          9250 Wilshire Blvd., Suite 325  Beverly
10                                         Hills, CA 90212 Telephone: (310) 777-
                                           8399 Facsimile: (310) 691-1086
11                                         Attorneys for Plaintiff
12                                         AUTOMOTIVE DATA SOLUTIONS,
                                           INC.
13

14   Dated: July 23, 2019                  COOLEY LLP

15                                         */s/* Matthew J. Brigham
16                                         MATTHEW J. BRIGHAM (191428)
                                           (mbrigham@cooley.com)
17                                         SARAH B. MOORE (292974)
18                                         (swhitney@cooley.com) 3175
                                           Hanover Street
19                                         Palo Alto, CA  94304-1130
20                                         Telephone: (650) 843-5000
                                           Facsimile: (650) 849-7400
21

22                                         STEPHEN R. SMITH (*pro hac vice*)
                                           (stephen.smith@cooley.com)
23                                         SAMUEL K. WHITT (284770)
24                                         (swhitt@cooley.com)
                                           1299 Pennsylvania Avenue, NW, Suite 700
25                                         Washington, DC  20004-2400
26                                         Telephone: (202) 842-7800
                                           Facsimile: (202) 842-7899
27                                         REBECCA L. TARNEJA (293461)
28                                         (rtarneja@cooley.com) 1333 2nd
                                           Street, Suite 400 Santa Monica, CA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

90401 Telephone: (310) 883-6400

Facsimile: (310) 883-6500

Attorneys for Defendants
DIRECTED ELECTRONICS CANADA INC., DEI HOLDINGS, INC. (AKA DIRECTED ELECTRONICS, INC.), and DIRECTED, LLC