1

2

3   COOLEY LLP
STEPHEN R. SMITH (*pro hac vice*)

4   (stephen.smith@cooley.com)
SAMUEL K. WHITT (284770)

5   (swhitt@cooley.com)
EMILY E. TERRELL (234353)

6   (eterrell@cooley.com)
1299 Pennsylvania Avenue NW

7   Suite 700
Washington DC 20004-2400

8   Tel: 202-842-7800
Fax: 202-842-7899

9
Attorneys for Defendants and

10   Counterclaim-Plaintiffs

REBECCA L. TARNEJA (293461)
(rtarneja@cooley.com)
1333 2d Street, Suite 400
Santa Monica, CA 90401
Tel: 310-883-6400
Fax: 310-883-6500

MATTHEW J. BRIGHAM (191428)
(mbrigham@cooley.com)
SARAH B. MOORE (292974)
(smoore@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304-1130
Tel: 650-843-5000
Fax: 650-849-7400

11

12                **UNITED STATES DISTRICT COURT**

13                **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16   AUTOMOTIVE DATA SOLUTIONS,
INC., a Canada Corporation,

17                Plaintiff,

18        v.

19   DIRECTED ELECTRONICS
CANADA INC., a Canada

20   Corporation; DEI HOLDINGS, INC.
(AKA DIRECTED ELECTRONICS,

21   INC.), a Florida Corporation;
DIRECTED, LLC, a Delaware LLC;

22   JIM MINARIK, an individual; KEVIN
DUFFY, an individual; ROBERT

23   STRUBLE, an individual; TAREK
KUTRIEH, an individual; MINAS

24   MINNASSIAN, an individual,

25                Defendants.

26

27   And Related Counterclaims.

28

Case No. 2:18-cv-01560-GW

**Defendants' Memorandum of
Contentions of Fact and Law
[L.R. 16-4]**

**REDACTED VERSION**

PTC Date:   October 21, 2019 Trial
Date:   November 5, 2019 Judge:
Honorable George H. Wu Ctr Rm:
9D

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...........................................................................................1

II.  FACTUAL BACKGROUND ........................................................................1

    A.  The After-Market Remote Starter Industry.........................................1

III.  PLAINTIFF'S CLAIMS ...............................................................................4

    A.  Summary of Plaintiff's Claims ............................................................4

    B.  Elements Required to Establish Plaintiff's Claims..............................5

        1.  Claims 1 and 2: Alleged Trade Secret Misappropriation ..............5

            a.  Summary of Defenses ...................................................5

            b.  Elements Required to Establish Plaintiff's Alleged
                Trade Secret Misappropriation Claim ..........................5

            c.  Brief Description of Key Evidence in Opposition ...............8

        2.  Claim 3: Alleged Copyright Infringement....................................9

            a.  Summary of Defenses ...................................................9

            b.  Elements Required to Establish Plaintiff's Alleged
                Copyright Infringement Claim .....................................9

            c.  Brief Description of Key Evidence in Opposition .............12

        3.  Claim 4: Alleged Patent Infringement...................................13

IV.  DEFENDANTS' AFFIRMATIVE DEFENSES AND
COUNTERCLAIMS ....................................................................................14

    A.  Fair Use of ADS's Asserted Purported Copyrights .........................14

        1.  Summary of Defenses ................................................................14

        2.  Elements Required .....................................................................14

        3.  Brief Description of Key Evidence.............................................16

    B.  Non-Infringement and Invalidity of U.S. Patent No. 8,856,780.............16

        1.  Summary of Defenses ................................................................17

         2.  Elements Required .....................................................................17

            a.  Non-Infringement .......................................................17

            b.  Subject Matter Ineligibility ........................................17

            c.  Anticipation ...............................................................18

            d.  Obviousness ...............................................................18

            e.  Non-Enablement .........................................................19

            f.  Written Description .....................................................21

            g.  Indefiniteness .............................................................21

         3.  Brief Description of Key Evidence.............................................22

            a.  Noninfringement.........................................................22

Cooley LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

b.   Subject Matter Ineligibility ..................................................22

c.   Anticipation ..........................................................................22

d.   Obviousness ..........................................................................22

e.   Non-Enablement ...................................................................23

f.   Written Description ...............................................................23

g.   Indefiniteness........................................................................23

C.   DEI's Counter Claim: Infringement of U.S. Patent Nos. 8,112,185, 7,898,386, and 7,519,400 ................................................................23

1.   Summary of Counter Claim..........................................................23

2.   Elements Required.........................................................................24

3.   Brief Description of Key Evidence................................................24

V.   ANTICIPATED EVIDENTIARY ISSUES .......................................26

VI.   ISSUES OF LAW ...............................................................................27

VII.   JURY TRIAL ......................................................................................27

VIII.   ATTORNEYS' FEES ..........................................................................27

IX.   ABANDONMENT OF ISSUES .........................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero Products Intern. Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006) ..................................................................8

*Agency Sols.com, LLC v. TriZetto Grp., Inc.*,
No. 1: 11-CV-1014 AWI GSA, 2012 U.S. Dist. LEXIS 85754
(E.D. Cal. June 19, 2012) ..........................................................................23

*AK Steel Corp. v. Sollac and Ugine*,
344 F.3d 1234 (Fed. Cir. 2003) ................................................................16

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014).............................................................................15

*Andrews v. McHale*,
2016 FC 624, 141 C. ..................................................................................9

*Aquastar Pool Products, Inc.*,
No. EDCV 18-94-GW(SPX), 2019 WL 2880410
(C.D. Cal. Apr. 29, 2019) .........................................................................15

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..........................................17, 18

*Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*,
501 F.3d 1274 (Fed. Cir. 2007) ................................................................17

*Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*,
742 F. Supp. 2d 1101 (C.D. Cal. 2010).......................................................5

*BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*,
1 F.3d 1214 (Fed. Cir. 1993) ....................................................................11

*Bilski v. Kappos*,
561 U.S. 593 (2010)..................................................................................15

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 577 (1994) ...........................................................................13

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*City of Inglewood v. Teixeira,*
No. CV-15-01815-MWF, 2015 U.S. Dist. LEXIS 114539
(C.D. Cal. Aug. 20, 2015) ...................................................................... 13

*The Comm. for Idaho's High Desert, Inc. v. Yost,*
92 F.3d 814 (9th Cir. 1996) ..................................................................... 5

*Ericsson Inc. v. Intellectual Ventures I LLC,*
890 F.3d 1336 (Fed. Cir. 2018) .............................................................. 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) .................................................................................. 8

*Finjan, Inc. v. Secure Computing Corp.,*
626 F.3d 1197 (Fed. Cir. 2010) .............................................................. 12

*Fisher v. Dees,*
794 F.2d 432 (9th Cir. 1986.) ................................................................. 14

*Fox Broad. Co. v. Dish Network*
LLC, 160 F. Supp. 3d 1139 (C.D. Cal. 2015) ......................................... 13

*Genentech, Inc. v. Novo Nordisk A/S,*
108 F.3d 1361 (Fed. Cir. 1997) .............................................................. 17

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
318 F. Supp. 1120 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295
(2d Cir. 1971) ..................................................................................... 11, 12

*Graham v. John Deere Co.,*
383 U.S. 1 (1966) .................................................................................... 16

*Halo Elecs., Inc. v. Pulse Elecs., Inc.,*
136 S. Ct. 1923 (2016) ............................................................................ 12

Harper *& Row, Publishers, Inc. v. Nation Enterprises,*
471 U.S. 539 (1985) ........................................................................... 13, 14

*Idema v. Dreamworks, Inc.,*
162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................... 5

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) .................................................................. 6

*Junker v. Eddings*,
   396 F.3d 1359 (Fed. Cir. 2005) ................................................................ 8

*Kelly v. Arriba Soft Corp.*,
   336 F.3d 811 (9th Cir. 2003) .................................................................. 13

*Kewanee Oil Co. v. Bicron Corp.*,
   416 U.S. 470 (1974)................................................................................... 6

*Kodadek v. MTV Networks, Inc.*,
   152 F.3d 1209 (9th Cir. 1998) .................................................................. 5

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007)................................................................................. 16

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) .................................................................. 12

*National Recovery Technologies, Inc. v. Magnetic Separation Systems,*
   *Inc.*, 166 F.3d 1190 (Fed. Cir. 1999) ................................................ 16, 17

*Nelson Bros. Prof'l Real Estate LLC v. Beau Jaussi*,
   No. SA CV-17-158-DOC, 2017 WL 8220703
   (C.D. Cal. Mar. 23, 2017) ......................................................................... 6

*Novell, Inc. v. Unicom Sales, Inc.*,
   No. C-03-2785-MMC, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ................... 5

*Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
   923 F.3d 1368 (Fed. Cir. 2019) .............................................................. 18

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014)................................................................................. 25

*Oracle Am., Inc. v. Google LLC*,
   886 F.3d 1179 (Fed. Cir. 2018) .............................................................. 14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
  575 F.2d 1152 (6th Cir. 1978) ................................................................. 11

*Pasillas v. McDonald's Corp.*,
  927 F.2d 440 (9th Cir. 1991) ................................................................... 10

*ResQNet.com, Inc v. Lansa, Inc.*,
  594 F.3d 860 (Fed. Cir. 2010) ................................................................. 12

*Rice v. Fox Broad. Co.*,
  148 F. Supp. 2d 1029 (C.D. Cal. 2001) .................................................. 10

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) (en banc) ................................................ 11

*Rockwell Collins, Inc.*,
  No. CV 17-1369 AG (JCGx), 2017 WL 5502775
  (C.D. Cal. Nov. 20, 2017) ..................................................................... 4, 5

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ................................................................................... 6

*Sanofi-Synthelabo v. Apotex, Inc.*,
  550 F.3d 1075 (Fed. Cir. 2008) ............................................................... 16

*Schering Corp. v. Geneva Pharms., Inc.*,
  339 F.3d 1373 (Fed. Cir. 2003) ............................................................... 16

*Sega Enters. v. Accolade*, Inc.,
  977 F.2d 1510 (9th Cir. 1992) ..................................................... 12, 13, 14

*Shapiro v. Hasbro, Inc.*,
  No. CV 16-5750-BRO, 2016 WL 9024810 (C.D. Cal. Aug. 15, 2016) ................... 5

*Smith Kline Diagnostics, Inc. v. Helena Labs.*,
  926 F.2d 1161 (Fed. Cir. 1991) ............................................................... 11

*Sokol Crystal Products, Inc. v. DSC Communications Corp.*,
  15 F.3d 1427 (7th Cir.1994) ...................................................................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Sony Comput. Entm't, Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000) ................................................................. 13

*Stavrinides v. De Bona*,
No. 2:18-cv-00314-CAS, 2018 WL 1311440
(C.D. Cal. Mar. 12, 2018) ........................................................................ 5

*Swirsky v. Carey*,
376 F.3d 841 (2004) ............................................................................... 10

*Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) ............................................................ 7, 8

*Thompson v. Keohane*,
516 U.S. 99 (1995) ................................................................................. 14

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) .............................................................. 9, 10

*Uniroyal, Inc. v. Rudkiun-Wiley Corp.*,
939 F.2d 1540 (Fed. Cir. 1991) ......................................................... 11, 12

*Urban Textile, Inc. v. Rue 21, Inc.*,
No. 2:14-cv-08285-ODW, 2016 U.S. Dist. LEXIS 163650
(C.D. Cal. Nov. 28, 2016) ......................................................................... 8

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988) ................................................................ 17

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ............................................................. 9, 10

*Wolstenholme v. Hirst*,
271 F. Supp. 3d 625 ................................................................................. 9

*Wordtech Sys., Inc. v. Integrated Networks Solns., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010) ............................................................... 12

*Wyers v. Master Lock Co.*,
616 F.3d 1231 (Fed. Cir. 2010) ............................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

17 U.S.C. § 107 ......................................................................................... 12, 13

17 U.S.C. § 301(a) ............................................................................................ 5

18 U.S.C. § 1836(b)(3) ..................................................................................... 6

18 U.S.C. § 1839 .......................................................................................... 5, 6

35 U.S.C. § 101 ........................................................................... 14, 15, 18, 22

35 U.S.C. § 102 .............................................................................................. 18

35 U.S.C. § 103 ........................................................................................ 16, 18

35 U.S.C. § 112 ........................................................ 14, 16, 17, 18, 19, 22

35 U.S.C. § 285 ........................................................................................ 22, 25

Cal. Civ. Code § 3426.1(a)(b)(d) ..................................................................... 6

Cal. Civ. Code § 3426.4 ............................................................................ 22, 23

Copyright Act 17 U.S.C. § 301 ........................................................................ 5

**Rules**

Federal Rule of Civil Procedure 54 ................................................................ 25

**Other Authorities**

Canadian Copyright Act, R.S.C., ch. C-42, § 5(1) (1985) ............................... 9

R.S.C. 1985, c. C-42, § 13(1) .......................................................................... 8

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 (1995) .................... 7

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# I.   INTRODUCTION

Defendants and Counter-Claimants Directed Electronics Canada Inc., DEI Holdings, Inc. and Directed, LLC (collectively "DEI"), Jim Minarik, Kevin Duffy, Robert Struble, Tarek Kutrieh, and Minas Minnassian (collectively "Individual Defendants") (DEI and Individual Defendants collectively, "Defendants") respectfully submit this Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4 in advance of trial scheduled to begin on November 5, 2019.

# II.   FACTUAL BACKGROUND

In this action, ADS alleges federal misappropriation of alleged trade secrets under the DTSA; state misappropriation under the CUTSA; copyright infringement; and patent infringement. (D.I. 54.) DEI has also counterclaimed for patent infringement. (D.I. 44.)  Defendants maintain that ADS's claims are meritless and Defendants have challenged all of ADS's claims in their pending summary judgment motions to be heard on October 17. To the extent any of ADS's claims remain after summary judgment, Defendants will establish ADS failed to satisfy its burden for each claim it asserts. A brief discussion of the case's factual background is below. At trial, Defendants will show these facts through fact and expert witness testimony and documentary evidence.

## A.   The After-Market Remote Starter Industry

ADS and DEI are competitors in the aftermarket remote starter industry. The remote vehicle starter business is predicated on reverse engineering efforts that seek to obtain the vehicle manufacturer's solution to bypass a car's security system immobilizer and start the vehicle without the original manufacturer keys. Immobilizers pose "challenge" messages that must be answered using the same "responses" that would normally be generated by the original keys that come with a vehicle.  These responses must be recreated in modules sold by ADS and DEI to remotely start vehicles.

Given this context, it is particularly crucial for ADS to show it owns the material over which it now claims copyright and trade secret protection, and not the carmakers. Similarly, it is important for ADS to show its alleged copyrighted material is original

to ADS (and not to the car makers) and that its trade secret material is in fact secret (and not something known by the car makers or otherwise publicly known).

### B.   ADS's Copyright Claims

Over the course of discovery, ADS's broad-sweeping copyright claims in the Second Amended Complaint were reduced to three ADS immobilizer bypass solutions: ███████████████████████. With respect to these three solutions, nearly all of ADS's claims relate to non-literal copying.  Importantly, ADS does not allege that DEI copied ADS's source code, but instead argues that there are a handful of similarities in structure, sequence, and organization between the parties' distinct code. Yet, ADS's expert admits it never examined the carmaker code from which ADS's solutions are derived, nor has ADS shown its purported copyrights are original works owned by ADS.

### C.   ADS's Trade Secret Claims

There is no dispute that DEI lawfully obtained an ADS remote start module and reverse engineered the "bootloader," a small section of code, contained in the module. DEI subsequently downloaded a handful of firmware binaries for five vehicle manufacturers to the module from ADS's public website as part of normal programming and use of the module.  DEI then used the reverse engineered bootloader to decrypt the downloaded firmware binaries to study the vehicle manufacturers' solutions to bypass vehicles' security system immobilizers without the original manufacturer keys. ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████

ADS's own expert also admitted that DEI lawfully reverse engineered the bootloader, which is available on every publicly sold ADS module. With respect to the other allegations, ████████████████████████████████████████ ████████████████████████████████████████████, and ADS requires users to download firmware from its website as part of normal use of its

products. Far from "hacking" or "stealing," DEI used lawfully obtained ADS modules as intended.

### D.    ADS's Patent Infringement Claims

Finally, ADS alleges that DEI's products infringe all claims of the U.S. Patent No. 8,856,780 (the "'780 patent"). The '780 patent is titled "Method and System to Remotely Flash an External Module" and describes methods and systems for programming an "external module" so that the external module may "communicate" with a "security device" in a vehicle. The '780 patent purports to have invented a method of "remotely flashing" an external module although it is undisputed that remote programming of external modules for bypassing vehicle immobilizers was well known for years before the priority date of the '780 patent. DEI maintains the accused products do not infringe any claim of the '780 patent and that the asserted claims are invalid under 35 U.S.C. §§ 101, 102, 103, and 112.

### E.    DEI's Counter-Claims for Patent Infringement

DEI asserts three patents related to the aftermarket vehicle electronics industry: U.S. Patent Nos. 8,112,185, 7,898,386, 7,519,400. All three patents are infringed directly and indirectly by ADS.

U.S. Patent No. 8,112,185 (the "'185 patent"), titled "Remote Engine Start Confirmation and Vehicle Monitoring and Control System" was filed on November 15, 2006 and claims priority to that date. The '185 patent is generally concerned with remote starter systems and claims systems and methods for detecting "pulsed voltage pattern[s]" across a vehicle's battery "during an engine start procedure" in order to determine the status of the starting procedure.

U.S. Patent No. 7,898,386 (the "'386 patent"), titled "Control Device for Vehicles" was filed on March 15, 2005 and claims priority to that date. The '386 is directed to a remote controller for a vehicle, which consists of a transceiver for two-way communications with a corresponding in-vehicle transceiver.

U.S. Patent No. 7,519,400 (the "'400 patent"), tiled "Multi-Modulation Remote

Control Communication System" was filed on May 27, 2005, its priority date. The '400 patent relates to optimizing communications between a transmitter and a module, including enabling different modulation schemes to optimize transmitter performance.

## III. PLAINTIFF'S CLAIMS[1]

### A. Summary of Plaintiff's Claims

Plaintiff alleges:

- **Claim 1**: Federal misappropriation of trade secrets under the DTSA;
- **Claim 2**: State misappropriation under the CUTSA;
- **Claim 3**: Copyright infringement; and
- **Claim 4**: Patent infringement.

### B. Elements Required to Establish Plaintiff's Claims

#### 1. Claims 1 and 2: Alleged Trade Secret Misappropriation

##### a. Summary of Defenses

Defendants dispute that ADS has met the required elements for CUTSA and DTSA claims. Defendants incorporate by reference their summary judgment briefing relating to ADS's alleged trade secret claims which sets forth a number of exemplary flaws in ADS's claims. (*See* D.I. 217.)

##### b. Elements Required to Establish Plaintiff's Alleged Trade Secret Misappropriation Claim

As the Court noted in its May 21, 2018 Order, DTSA and CUTSA trade secret claims can be analyzed together, as the pertinent statutory provisions are similar.  (D.I. 27 at 5 (citing *Rockwell Collins, Inc.*, No. CV 17-1369 AG (JCGx), 2017 WL 5502775, at *2 (C.D. Cal. Nov. 20, 2017).) To succeed on a misappropriation of trade secret claim under the DTSA or CUTSA, Plaintiff must show: (1) Plaintiff owned the alleged trade secrets; (2) the alleged trade secrets were trade secrets at the time of misappropriation;[2]

---

[1] In addition to the elements set forth herein, Defendants incorporate by reference the proposed jury instructions to be served on October 7, 2019.

[2] To the extent ADS fails to show its claim is in fact trade secret, ADS's CUTSA claim is preempted by copyright law because the alleged software at issue is within the "subject matter" of copyright and the gravamen of the CUTSA claim—that DEI

(3) Defendant acquired, disclosed, or used the alleged trade secrets through improper means; (4) Defendant's actions damaged Plaintiff. 18 U.S.C. § 1839 (DTSA); Cal. Civ. Code § 3426.1(d) (CUTSA); *Shapiro v. Hasbro, Inc.*, No. CV 16-5750-BRO, 2016 WL 9024810, at *7 (C.D. Cal. Aug. 15, 2016); CACI 4401.

In order to establish liability on the part of the Individual Defendants, ADS must establish that the Individual Defendants had knowledge of the alleged misappropriation and infringement, directed or controlled the torts that were committed while acting as an agent of the corporation, and acted as the "guiding spirit" or "central figure" in the alleged activity. *Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1114 (C.D. Cal. 2010) (citing *The Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) and *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785-MMC, 2004 WL 1839117, *17 (N.D. Cal. Aug. 17, 2004)) (applying this principle to copyright infringement) (internal quotation marks omitted).

**Ownership of a Trade Secret**

With respect to (1) and (2), ownership of an alleged trade secret that was a trade secret at the time of the alleged misappropriation, "[b[oth the DTSA and the CUTSA define a trade secret as information that: (1) derives its economic value from not being generally known; and (2) is subject to reasonable measures of secrecy by its owner." *Rockwell Collins, Inc.*, No. SACV 17-1369-AG, 2017 WL 5502775, at *2 (C.D. Cal. Nov. 10, 2017); *see also* Cal. Civ. Code § 3426.1(d); 18 U.S.C. § 1839. The Court may address the federal and state trade secret claims together as the analysis under either law

---

allegedly used ADS's software for its own purposes—is the same as the rights protected by the Copyright Act. 17 U.S.C. § 301. The Copyright Act "explicitly preempts" state-law claims "'that are equivalent to any of the exclusive rights within the general scope of copyright.'" *Stavrinides v. De Bona*, No. 2:18-cv-00314-CAS, 2018 WL 1311440, at *5 (C.D. Cal. Mar. 12, 2018) (quoting 17 U.S.C. § 301(a)). The Ninth Circuit employs a two-part test to determine whether the Copyright Act preempts a state-law claim: (1) the work at issue must come within the subject matter of copyright law; and (2) the rights granted under state law must be equivalent to those protected by the Copyright Act. *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1189 (C.D. Cal. 2001); *see Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998).

is similar.  *Nelson Bros. Prof'l Real Estate LLC v. Beau Jaussi*, No. SA CV-17-158-DOC, 2017 WL 8220703, at *4 (C.D. Cal. Mar. 23, 2017). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

### Misappropriation of the Alleged Trade Secret

To prove trade secret misappropriation, ADS must prove that an ADS trade secret was obtained by "improper means."  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998).   The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  18 U.S.C. § 1839(6)(A).  The CUTSA's definition of improper means is similar.  *See* Cal. Civ. Code § 3426.1(b), (d).

But, as the Court has acknowledged, "[b]oth the DTSA and CUTSA expressly exclude reverse engineering from the definition of 'improper means.'"  (D.I. 27 at 5 (quoting 18 U.S.C. § 1839(6)(B)); Cal. Civ. Code § 3426.1(a)).)[3]

### Damages

DTSA and CUTSA require damages claimed for actual loss or unjust enrichment to be "caused by" the misappropriation alleged.  18 U.S.C. § 1836(b)(3); Ca. Civ. Code. § 3426.3; *see also* CACI 4409.  To receive "exemplary" damages ADS must show the trade secrets were "willfully and maliciously misappropriated." 18 U.S.C. § 1863(b)(3).

### c.   Brief Description of Key Evidence in Opposition

Key evidence shows ADS's alleged trade secrets are not in fact secret and that

---

[3] 18 U.S.C. § 1839(6) ("[T]he term 'improper means' . . . does not include reverse engineering, independent derivation, or any other lawful means of acquisition."); Cal. Civ. Code § 3426.1(a) ("Reverse engineering or independent derivation alone shall not be considered improper means."); see also *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 489–90, 94 (1974) ("Trade secret law provides far weaker protection in many respects than the patent law.  While trade secret law does not forbid the discovery of the trade secret by fair and honest means, e.g., independent creation or reverse engineering, patent law operates 'against the world,' forbidding any use of the invention for whatever purpose for a significant length of time.") (footnote omitted).)

DEI's immobilizer bypass solutions are different and independently developed from ADS's alleged trade secrets. ADS's expert, Robert Zeidman, admits this reverse engineering of ADS's remote starter, and specifically the "bootloader," a small section of code contained in every publicly sold ADS module, is not improper means. Further, ADS allowed anyone who possessed a remote start product to download firmware from ADS's public website as part of the normal, *required* use of the product.  For example, the ADS public, user-facing website, ███████████████████████████████████████████████████████████████████████████████████. Similarly, ADS's CEO, Frank Barassi, and others admitted that the ADS module is designed to download firmware from ADS's website and that ██████████████████████████████████████████████████ DEI's source code is also key evidence showing its immobilizer bypass solutions are different than ADS's alleged trade secrets and were independently developed.

As discussed in Defendants' summary judgment briefing relating to ADS's alleged trade secret claims (*See* D.I. 217), ADS's alleged trade secrets are not secret: they are based on information owned by carmakers, not by ADS. Evidence that the alleged trade secrets were not misappropriated by DEI is also outlined in its summary judgment briefing. (*See* D.I. 217.)   Additional documents will be included in Defendants' exhibit list to be exchanged on October 7.

Damages accrue from the time a trade secret is misappropriated until such a time as the defendant would have acquired knowledge of the trade secret through legitimate means, such as independent development.[4] Plaintiff may not recover lost profit damages for both copyright and trade secret claims on the same accused products, as this would

---

[4] *See, e.g.*, RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 (1995); *see also, e.g., Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1318 (Fed. Cir. 2018) (vacating jury's award of damages for trade secret misappropriation where damages were not limited to a "head-start period"); *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1433 (7th Cir.1994) ("where a misappropriation of a trade secret only gives a competitor a 'head start' in developing a product, damages should be limited to the injury suffered in that 'head start' period").

result in an impermissible double-recovery.[5] Key evidence with respect to ADS's alleged trade secret damages claims is outlined in Defendants' *Daubert* Motion to exclude the testimony of Peter Hess (*see* D.I. 203.), and Defendants incorporate its briefing on its *Daubert* motion.  Additional documents will be included in Defendants' exhibit list to be exchanged on October 7.

### 2.   Claim 3: Alleged Copyright Infringement

#### a.   Summary of Defenses

As discussed in Section IV.A. below, Defendants raise a fair use affirmative defense in response to ADS's alleged copyright infringement claims. Defendants also dispute that ADS has met the required elements for a copyright infringement claim. Defendants incorporate by reference their summary judgment briefing relating to ADS's purported copyright infringement claims. (*See* D.I. 207.)

#### b.   Elements Required to Establish Plaintiff's Alleged Copyright Infringement Claim

To demonstrate copyright infringement, a plaintiff must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991) (internal citation omitted). It is Plaintiff's burden to show ownership of a valid copyright. *Urban Textile, Inc. v. Rue 21, Inc*., No. 2:14-cv-08285-ODW (FFMx), 2016 U.S. Dist. LEXIS 163650, at *10 (C.D. Cal. Nov. 28, 2016).  Under Canadian law, an entity must have direct authorship, or authority from the author, to claim copyright ownership.  R.S.C. 1985, c. C-42, § 13(1) ("the author of a work shall be the first owner of the copyright therein"); id. § 13(3)-(7) (providing for ownership by employment, assignment, or license).

**Ownership of a Valid Copyright**

Pursuant to Canadian law, copyright subsists for "original literary, dramatic, musical and artistic work[s] . . . whether published or unpublished . . . [if] the author

---

[5] *See, e.g., Texas Advanced Optoelectronic Solutions Inc.*, 895 F.3d at 1328; *Junker v. Eddings*, 396 F.3d 1359 (Fed. Cir. 2005); *Aero Products Intern. Inc. v. Intex Recreation Corp*., 466 F.3d 1000 (Fed. Cir. 2006).

was, at the date of the making of the work, a citizen or subject of, or a person ordinarily resident in, a treaty country." Canadian Copyright Act, R.S.C., ch. C-42, § 5(1) (1985). Canadian copyright law "protects only original expression," not "the idea underlying the expression." *Andrews v. McHale*, 2016 FC 624, 141 C.P.R. (4th) 407, ¶ 86; *see also Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 640 (citing CCH, 1 S.C.R. 339, para. 22) ("[I]n Canada, as in the United States, copyright protection does not extend to facts or ideas, but is limited to the expression of ideas."). Therefore, "skill and judgment" alone do not lead to copyright protection, as "intellectual effort" that "fall[s] into the category of ideas, methods, procedures, algorithms or other categories of contributions which, while perhaps valuable, fall outside … copyright law." *Andrews*, 2016 FC 624, ¶ 88.

**Ownership – Derivative Works**

Canadian law "has [also] generally given protection to derivative works in their own right, so long as the originality required by the Act is present." McKeown, FOX ON CANADIAN LAW OF COPYRIGHT AND INDUSTRIAL DESIGNS § 4:5. Canadian courts have found "[a] work which is substantially derived from pre-existing material [(a derivative work)] will be the proper subject-matter of copyright if sufficient labour and skill have been bestowed on it." *Id*. Canadian copyright law requires consent of the original author in order to own derivative works. McKeown, FOX ON CANADIAN LAW OF COPYRIGHT AND INDUSTRIAL DESIGNS § 4:5. ("[S]ince the exclusive rights, which include the rights to make derivative works, are vested in the author, another individual who wishes to make a 'derivative' work will require the consent of the author.").

**Copying of Original Elements**

"Absent direct evidence of copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (internal citations and quotations omitted). There is a "two part test for substantial similarity: an extrinsic test and an intrinsic test." *Williams v. Gaye*, 895 F.3d

1106, 1119-20 (9th Cir. 2018). **"**For a jury to find substantial similarity, there must be evidence on both the extrinsic and intrinsic tests." *Id*. (internal citations and quotations omitted). "The extrinsic test is objective." *Id*. (citing *Swirsky v. Carey*, 376 F.3d 841, 845 (2004). It "considers whether two works share a similarity of ideas and expression as measured by external, objective criteria." *Id*. Application of "[t]he extrinsic test requires 'analytical dissection of a work and expert testimony.'" *Id*. (quoting *Three Boys Music*, 212 F.3d at 485). In turn, analytical dissection "requires breaking the works 'down into their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity.'" *Id*. (quoting *Rice v. Fox Broad. Co.*, 148 F. Supp. 2d 1029, 1051 (C.D. Cal. 2001)). The intrinsic test, is subjective. *Three Boys Music*, 212 F.3d at 485. It "asks 'whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar.'" *Id*. (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)).   "Because the requirement is one of substantial similarity to *protected* elements of the copyrighted work, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky*, 376 F.3d at 845.

### c.   Brief Description of Key Evidence in Opposition

Given ADS's starting point (the car maker's binary code), ADS must prove both ownership of its asserted copyrights and that the copyrights are in fact original to ADS (and not to the OEM/car makers).  ADS's "evidence" that it owns the copyrights that it asserts in this case at best compares its C-code *representation* of what it believes to be the car maker's code to its code, rather than obtaining and comparing binaries, disassembled code, or C code directly from the car-maker with the code that implements ADS's solutions.  ADS therefore cannot prove its purported copyrighted works are original or different from the car maker's code from which it is based.

ADS's expert Robert Zeidman also acknowledges that DEI did not in fact copy ADS's source code. Instead, he alleges that the accused DEI solutions are similar in structure, sequence, and organization. Yet, DEI's source code shows it has different

10

structure, sequence, and organization than ADS's alleged copyrighted material. Evidence that DEI did not infringe any valid, original copyright owned by ADS is further outlined in its summary judgment briefing relating to ADS's alleged copyright infringement claims. (*See* D.I. 207.) Evidence with respect to ADS's alleged copyright damages claims is outlined in Defendants' *Daubert* Motion to exclude the testimony of Peter Hess (*see* D.I. 203.), and Defendants incorporate their *Daubert* briefing, including for example the prohibition on a double-recovery of lost profits damages. Additional documents will be included in Defendants' exhibit list to be exchanged on October 7.

### 3. Claim 4: Alleged Patent Infringement

ADS alleges DEI infringes U.S. Patent No. 8,856,780. With respect to this claim please see Section II B. above and Section IV. B. below. Additionally, with regard to determining damages for the alleged patent infringement: "To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc*., 1 F.3d 1214, 1218 (Fed. Cir. 1993). The burden rests on the patent owner to "show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer." *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc). The *Panduit* test, set out in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc*., 575 F.2d 1152 (6th Cir. 1978), establishes a framework for a patentee to show "but for" causation. *Rite-Hite*, 56 F.3d at 1545.[6]

To determine reasonable royalty damages, courts typically consider a "hypothetical negotiation" between a willing licensor and a willing licensee to guide the analysis. In *Georgia-Pacific* the court enumerated 15 factors considered in

---

[6] Under the Panduit test, the patentee must make a showing of: (1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Panduit*, 575 F.2d at 1156. A patentee cannot recover lost profits unless he has established all of the Panduit factors. *Smith Kline Diagnostics, Inc. v. Helena Labs*., 926 F.2d 1161, 1165 (Fed. Cir. 1991); *see also Uniroyal, Inc. v. Rudkiun-Wiley Corp*., 939 F.2d 1540, 1544 (Fed. Cir. 1991).

determining a reasonable royalty. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1120 (S.D.N.Y. 1970), *modified and aff'd,* 446 F.2d 295 (2d Cir. 1971).[7]

Further, the punitive nature of enhanced damages requires that the Court "reserve punishment for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016). Egregious behavior is behavior that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 1932.

Evidence related to ADS's alleged patent damages claims is outlined in Defendants' *Daubert* Motion to exclude the testimony of Peter Hess (*see* D.I. 203) which Defendants incorporate by reference.

## IV.   DEFENDANTS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS[8]

### A.   Fair Use of ADS's Asserted Purported Copyrights

#### 1.   Summary of Defenses

To the extent DEI copied any protected material of ADS, which DEI denies, DEI's use constitutes fair use. Where disassembly is the only way to obtain access to the ideas and functional elements embodied in a purportedly copyrighted computer program, disassembly is fair use as a matter of law. *Sega Enters. v. Accolade*, Inc., 977 F.2d 1510, 1527-28 (9th Cir. 1992).

#### 2.   Elements Required

The "fair use" of a copyrighted work is not an infringement of copyright. 17

---

[7] In particular, *Georgia-Pacific* Factors 1 and 2 examine the royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty, and the rates paid by the licensee for the use of other patents comparable to the patented technology. *Id.* "[C]omparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them." *Wordtech Sys., Inc. v. Integrated Networks Solns., Inc.*, 609 F.3d 1308, 1319-20 (Fed. Cir. 2010); *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010) ("[U]se of past patent licenses under [*Georgia-Pacific*] factors 1 and 2 must account for differences in the technologies and economic circumstances of the contracting parties."); *ResQNet.com, Inc v. Lansa, Inc*., 594 F.3d 860, 869, 873 (Fed. Cir. 2010); *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

[8] In addition to the elements set forth herein, Defendants incorporate by reference the proposed jury instructions to be served on October 7, 2019.

U.S.C. § 107. *Fox Broad. Co. v. Dish Network* LLC, 160 F. Supp. 3d 1139, 1170 (C.D. Cal. 2015). The four fair use factors are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107." *Kelly v. Arriba Soft Corp*., 336 F.3d 811, 817 n.12 (9th Cir. 2003)

A fair use analysis "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis. . . . Nor may the four statutory factors be treated in isolation, one from another. All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 577-78 (1994). "The statutory factors are [also] not exclusive." *Sega Enters.*, 977 F.2d at 1521-22. "Rather, the doctrine of fair use is in essence 'an equitable rule of reason.'" *Id*. (citing Harper *& Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 560 (1985) (internal citations omitted).[9]

Because "unprotected ideas and functions of the code" are "frequently undiscoverable" in the absence of "investigation and translation that may require copying the copyrighted material." *Sony Comput. Entm't, Inc. v. Connectix Corp*., 203 F.3d 596, 602 (9th Cir. 2000). Such "intermediate copying and use" of software to develop software that executes the same functionality is "a fair use for the purpose of gaining access to the unprotected [i.e., functional] elements of [the] software." *Id*. Further, "where disassembly is the only way to gain access to the ideas and functional elements embodied in a copyrighted computer program and where there is a legitimate reason for seeking such access, disassembly is a fair use of the copyrighted work, as a

---

[9] *See also City of Inglewood v. Teixeira*, No. CV-15-01815-MWF (MRWx), 2015 U.S. Dist. LEXIS 114539, at *18 (C.D. Cal. Aug. 20, 2015) ("Supreme Court precedent and the legislative history also make clear that fair use analysis is not appropriately conducted through the use of bright line rules, but must be dealt with on a case by case basis.") (citing *Harper & Row Publishers, Inc.*, 471 U.S. at 560).

1  matter of law." *Sega Enters.*, 977 F.2d at 1527-28.[10]

2          **3.     Brief Description of Key Evidence**

3          DEI's permissible reverse engineering techniques permitted DEI to derive factual

4  (i.e. functional) elements of the algorithm that that code implemented. That DEI and

5  ADS use different processors, shows DEI re-interpreted the functional elements of the

6  carmaker algorithms that ADS and DEI must implement for an immobilizer bypass

7  solution to work. ADS's expert also agrees that DEI did not copy ADS's source code

8  and that DEI did in fact disassemble ADS's code, an action permitted by law.

9      **B.     Non-Infringement and Invalidity of U.S. Patent No. 8,856,780**

10         The DEI entity Defendants[11] raise non-infringement and invalidity of the '780

11  patent as an affirmative defense to ADS's infringement claim. The grounds for that

12  defense are described in more detail below. DEI maintains they have not infringed and

13  do not infringe asserted claims 1-20 of the '780 patent.

14          **1.     Summary of Defenses**

15         DEI alleges that the asserted claims of the '780 patent are invalid for failure to

16  meet one or more requirements for patentability under 35 U.S.C. §§ 101, 102, 103, and

17  112. DEI filed a motion for summary judgment of invalidity under 35 U.S.C. § 101

18  (subject matter ineligibility) and § 112 (written description and enablement). (D.I. 201.)

19  DEI incorporates by reference their summary judgment briefing relating to the

20  invalidity of ADS's asserted patent. (*See* D.I. 201.)

21

22  _____
   [10] "Fair use is a mixed question of law and fact." *Sega Enters.*, 977 F.2d at 1521-22;
23  see also Harper & Row Publishers, 471 U.S. at 560. "While inferences from the four-
   factor analysis and the ultimate question of fair use are 'legal in nature,' in the Ninth
24  Circuit, disputed historical facts represent questions for the jury." *Oracle Am., Inc. v.
   Google LLC*, 886 F.3d 1179, 1194-95 (Fed. Cir. 2018) (citing *Fisher v. Dees*, 794 F.2d
25  432, 436 (9th Cir. 1986.). "The Supreme Court has described 'historical facts' as 'a
   recital of external events.'" *Oracle Am., Inc.*, 886 F.3d at 1193-94 (citing *Thompson v.
26  Keohane*, 516 U.S. 99, 110 (1995)). "In the fair use context, historical facts include the
   'origin, history, content, and defendant's use' of the copyrighted work." *Oracle Am.,
27  Inc.*, 886 F.3d at 1193-94.
   [11] Plaintiff confirmed the individual defendants are not charged with patent
28  infringement.

1

2.   **Elements Required**

2

a.   **Non-Infringement**

3

"A determination of patent infringement requires a two-step analysis.  The first

4

step is to construe the claims…This step is a question of law.  The second step is to

5

compare the properly construed claims to the accused product to determine whether

6

each of the claim limitations is met...This determination is a question of fact." *Aquastar*

7

*Pool Products, Inc.*, No. EDCV 18-94-GW(SPX), 2019 WL 2880410, at * (C.D. Cal.

8

Apr. 29, 2019) (internal quotes and citations omitted).

9

b.   **Subject Matter Ineligibility**

10

Section 101 "defines the subject matter that may be patented under the Patent

11

Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  Patentable subject matter includes

12

"any new and useful process, machine, manufacture, or composition of matter, or any

13

new and useful improvement thereof." 35 U.S.C. § 101.  However, § 101 "contains an

14

important implicit exception: Laws of nature, natural phenomena, and abstract ideas are

15

not patentable." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal

16

citation omitted).   In *Mayo*, the Supreme Court established a "framework for

17

distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas

18

from those that claim patent-eligible applications of those concepts." *See Alice*, 134 S.

19

Ct. at 2355.  This framework is described in Alice:[(1)] First, we determine whether the

20

claims at issue are directed to one of those patent-ineligible concepts.  If so, . . . we

21

consider the elements of each claim both individually and as an ordered combination to

22

determine whether the additional elements transform the nature of the claim into a

23

patent-eligible application.  [(2)]We have described step two of this analysis as a search

24

for an inventive concept—i.e., an element or combination of elements that is sufficient

25

to ensure that the patent in practice amounts to significantly more than a patent upon

26

the ineligible concept itself. *Id.* (internal citations, brackets, and quotations omitted).

27

c.   **Anticipation**

28

"Anticipation is a question of fact, and a finding of anticipation requires that

every limitation of the claim is present in a single prior art reference." *Ericsson Inc. v. Intellectual Ventures I LLC*, 890 F.3d 1336, 1338 (Fed. Cir. 2018). "[A] prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the [] reference." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003).

### d.   Obviousness

A patent claim is invalid for obviousness if the differences between the claimed invention and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention. 35 U.S.C. § 103. "[O]bviousness is a matter of law based on findings of underlying fact." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008). Underlying factual considerations include: (1) scope and content of the prior art, (2) differences between the prior art and the claims at issue, (3) level of ordinary skill in the pertinent art, and (4) secondary considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007). Obviousness is judged under "an expansive and flexible approach" driven by "common sense." *See KSR*, 550 U.S. at 415, 420-21; *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238-40 (Fed. Cir. 2010).[12]

### e.   Non-Enablement

Section 112 requires that a patent's specification enable a person of ordinary skill in the art to "make and use" the *full scope* of an invention.  35 U.S.C. § 112 ¶ 1; *AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003).  "The scope of the claims must be less than or equal to the scope of the enablement."  *National*

---

[12] "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 550 U.S. at 416. "[W]hen a patent simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *Id.* at 417 (internal quotation marks omitted). Additionally, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person or ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.* at 421.

*Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, 1195–96 (Fed. Cir. 1999).  "The scope of enablement, in turn, is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation."  *Id.*  However, the enabling disclosure for allegedly novel aspects of a claimed invention must be found in the specification, "not the knowledge of one skilled in the art," "in order to constitute adequate enablement." *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1283 (Fed. Cir. 2007) (quoting *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997)).

The following factors may be considered to determine if undue experimentation is required: (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) ("*Wands* factors").

### f.    Written Description

The Patent Act mandates that an invention be adequately described in a patent's specification: "The specification shall contain a written description of the invention, and of the manner and process of making and using it."  35 U.S.C. § 112 ¶ 1.  The test of written description "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.  Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed."  *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  "The focus of the written description requirement is [] on whether the specification notifies the public about the boundaries and scope of the claimed invention and shows that the inventor possessed all the aspects of the claimed invention."  *Id.* at 1382. [13]

---

[13] "Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of 'invention'—that is, conceive of the

### 3.   Brief Description of Key Evidence

#### a.   Noninfringement

The '780 patent distinguishes between key-related *data* and *computer programs*. There is key evidence that DEI's accused products do not infringe any claim of the '780 patent because DEI's accused Key2Go server does not generate or transfer any "computer program," as required to practice the claims of the '780 patent. ██████████ ████████████████████████████████████████████████████. DEI incorporates by reference its summary judgment briefing relating to noninfringement of the '780 patent which sets forth certain key evidence.  (*See* D.I. 201.)

#### b.   Subject Matter Ineligibility

The '780 patent is invalid because the asserted claims are directed to a patent-ineligible abstract idea under § 101.  Specifically, the '780 patent's claims are directed to the abstract idea of transferring data, analyzing data, and generating instructions for communicating with a vehicle's security system.   None of the claims include an inventive concept sufficient to establish patent eligibility. Further, DEI incorporates by reference its summary judgment briefing relating to invalidity of ADS's asserted patent which reflects key evidence related to subject matter ineligibility. (*See* D.I. 201.)

#### c.   Anticipation

Evidence showing that asserted '780 patent claims are invalid as anticipated under 35 U.S.C. § 102 is outlined in the expert report of DEI's expert Mr. Scott Andrews, including Canadian Patent No. 2,704,810 ("Tessier"), and DEI's Invalidity contentions.

#### d.   Obviousness

Evidence showing the asserted '780 patent claims are invalid as obvious under 35

complete and final invention with all its claimed limitations—and disclose the fruits of that effort to the public." *Id.* at 1353. "'[T]he appearance of mere indistinct words in a specification or a claim, even an original claim, does not necessarily satisfy § 112, ¶ 1 because it may not both put others on notice of the scope of the claimed invention and demonstrate possession of that invention." *Nuvo Pharm. (Ireland) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368, 1380 (Fed. Cir. 2019) (internal citation omitted).

U.S.C. § 103 is outlined in the expert report of DEI's expert Scott Andrews, including the combinations outlined therein, and DEI's Invalidity contentions. The combinations outlined in the report are: (1) Tessier CA and or the combination of Tessier CA and Tessier US and/or one or more of Fortin, Kishida, Chen, and XKLoader2; (2) Brinkmeyer in Combination with Fortin and/or Aubertin, and or XKLoader2; and (3) Ablay in Combination With Fortin and/or Tessier US and/or Tessier CA.

### e.    Non-Enablement

The claims do not comply with the written description requirement because nothing in the specification indicates that the '780 patent's inventors were in possession of any algorithm for generating a computer program, as recited in the '780 patent's claims. DEI incorporates by reference its summary judgment briefing relating to invalidity of ADS's asserted patent which shows that the asserted '780 patent claims are invalid for lack of enablement under 35 U.S.C. § 112. (*See* D.I. 201.)

### f.    Written Description

The patent's specification also fails to enable a person of ordinary skill in the art to generate a computer program, as recited in the claims. DEI further incorporates by reference its summary judgment briefing relating to invalidity of ADS's asserted patent which shows that the asserted '780 patent claims are invalid for inadequate written description under 35 U.S.C. § 112. (*See* D.I. 201.)

### C.    DEI's Counter Claim: Infringement of U.S. Patent Nos. 8,112,185, 7,898,386, and 7,519,400

#### 1.    Summary of Counter Claim

Defendants have counter claimed for patent infringement, asserting that ADS products infringe the following claims of the following three asserted patents:

- **Counter Claim 1**: Infringement of U.S. Patent No. 8,112,185
- **Counter Claim 2**: Infringement of U.S. Patent No. 7,898,385
- **Counter Claim 3**: Infringement of U.S. Patent No. 7,519,400

### 2. Elements Required

*See* Section IV.B.2.a. above for the required elements.

### 3. Brief Description of Key Evidence

Evidence supporting DEI's infringement theories for the accused products includes product manuals, products guides, how-to pages, marketing and advertising materials, and/or instructions, including at the following sites: https://www.adsdata.ca; http://www.idataguides.com;   http://www.idatalink.com;   http://www.idatastart.com. DEI also intends to rely on other non-public ADS documents and source code to demonstrate the infringing functionality.

With respect to each of its counterclaims, DEI also incorporates by reference its opposition to ADS's summary judgment briefing relating to the claimed noninfringement of DEI's three asserted patents. (*See* D.I. 201.)

### a. Counter Claim 1: Infringement of U.S. Patent No. 8,112,185 (Claims 1-12, 15-16)

Regarding the '185 patent, ADS's VTS algorithm meets the limitations of the '185 patent. DEI's expert, Mr. Chris Wilson, testified that

In addition, contrary to ADS's arguments, the claims of the '185 patent do not require detection of voltage "frequency."

DEI accuses ADS's use of the VTS algorithm in ADS's iDatalink bypass modules and all of ADS's HC, BA, and DC3 iDataStart remote start modules of infringing the '185 patent. In addition to the materials referenced in Section IV.C.3. above, DEI intends to rely on ADS documents that describe the VTS algorithm implemented in ADS's iDataStart products as well as validation reports showing testing of VTS with ADS's iDatalink products in combination with third-party remote starters.

### b. Counter Claim 2: Infringement of U.S. Patent No. 7,898,386

**(Claims 1-7)**

With respect to the '386 patent, ADS presents a construction of the phrase "translucent key switch" that is directly contrary to how that phrase is defined and used in the '386 patent.  Specifically, the translucent key switches described in the '386 patent clearly include translucent covers of the key switches, as described and shown in the '386 patent.  Because the covers are part of the claimed translucent key switches, ADS's accused key fobs practice the "translucent key switch" limitations.  Specifically, the LED lights beneath the translucent key switches in ADS's accused key fobs are clearly "beneath" the key switches, as recited in the asserted claims.

DEI accuses the following ADS key fobs of infringing the '386 patent: OBTR2352A, TR2350AC, TR2350AC (KIA), TR2350AC (MITSUBISHI), TR2350AK, TR2450A, TR2450AE, TR3450AE, and TR3450AF. In addition to the materials referenced in Section IV.C.3. above, DEI will rely on schematics and teardown photos of the infringing key fobs.

### c.  Counter Claim 3: Infringement of U.S. Patent No. 7,519,400 (Claims 1, 14)

Finally, with respect to the '400 patent, both experts agree that ADS's accused products are "operative to" transmit in multiple modulation modes, as claimed. Moreover, as ADS's expert acknowledges, ADS's key fobs include an "SPI interface" through which ADS's accused key fobs may be programmed to operate in a plurality of modulation modes.

DEI accuses the following ADS key fobs of infringing the '400 patent: OBTR2352A, TR2310A, TR2350AC, TR2350AC (KIA), TR2350AC (MITSUBISHI), TR2350AK, TR2410A, TR2450A, TR2450AE, TR2550A, TR2650A, TR3450AE, and TR3450AF. In addition to the materials referenced in Section IV.C.3. above, DEI will rely on schematics and datasheets demonstrating that ADS's key fobs are operative to communicate in multiple modulation modes.

## V. ANTICIPATED EVIDENTIARY ISSUES

Defendants filed five motions in limine contemporaneously with the instant memorandum on October 4, 2019 and will lodge objections to ADS's exhibits and deposition designations pursuant to the parties' stipulation (D.I. 318). Defendants incorporate these materials by reference, which include their positions with respect to these matters. As will be discussed in the Joint Pretrial Order, to be filed October 10, 2019, DEI also intends to seek bifurcation with respect to Plaintiff's punitive damages claim. Defendants also incorporate the pretrial order by reference, which includes their positions with respect to this matter. Defendants reserve the right to raise additional evidentiary issues as this case proceeds.

## VI. ISSUES OF LAW

There are a number of pending motions for summary judgment: (1) Defendants' Motion for Summary Judgment of Patent Invalidity under 35 U.S.C. § 101 (Subject Matter Ineligibility) and 35 U.S.C. § 112 (written description and non-enablement) (*See* D.I. 201); (2) Defendants' Motion for Summary Judgment of No Alleged Trade Secret Misappropriation (*See* D.I. 217); (3) Defendants' Motion for Summary Judgment of No Alleged Copyright Infringement (*See* D.I. 207); (4) Defendants' *Daubert* Motion to exclude the testimony of Peter Hess; and (5) DEI Holdings, Inc. and the Individual Defendants' Motion for Summary Judgment of No Liability. (*See* D.I. 210) Defendants incorporate their summary judgment briefing by reference, which includes their positions on the issues. The summary judgment hearing is scheduled for October 17.

## VII. JURY TRIAL

The parties timely requested a jury trial on all issues so triable.

## VIII. ATTORNEYS' FEES

Defendants seek costs and attorney fees pursuant to Civil Code Section 3426.4 and 35 U.S.C. § 285. Pursuant to Civil Code Section 3426.4 "If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may

award reasonable attorney's fees and costs to the prevailing party.…" Cal. Civ. Code § 3426.4. "Recoverable costs hereunder shall include a reasonable sum to cover the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party." *Id*.

"Because there is no statutory definition of 'bad faith' in the context of trade secret misappropriation, California courts have developed a two-pronged standard for the evaluation of such claims. The party seeking an award of attorney's fees under section 3426.4 must show (1) the objective speciousness of opposing party's claim, and (2) the subjective bad faith of the opposing party in bringing or maintaining the action, that is, for an improper purpose….Objective Speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim…Objective speciousness may be shown by, among other factors, demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm." *Agency Sols.com, LLC v. TriZetto Grp., Inc*., No. 1: 11-CV-1014 AWI GSA, 2012 U.S. Dist. LEXIS 85754, at *2-5 (E.D. Cal. June 19, 2012) (internal citations and quotations omitted). "Subjective bad faith may be inferred by evidence that [a party bringing an action for trade secret infringement] intended to cause unnecessary delay, filed the action to harass [the opposing party], or harbored improper motive….The timing of the action may raise an inference of bad faith. [. . . .] Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." *Id*. (internal citations and quotations omitted).

Numerous factual bases support DEI's request for fees. Plaintiff is trying to use the Court system to alter the competitive landscape by publicly accusing its main competitor (DEI) of misdeeds and harassing virtually every DEI current and former officer and director in recent history. ADS named the Individual Defendants, but as discussed in the Individual Defendants Motion for Summary Judgment of No Liability

(D.I. 212) which is herein incorporated by reference, ADS cannot and has not proven that any infringement or misappropriation is attributable to DEI, let alone the individual defendants. ADS deposed six high ranking executives and directors who have categorically denied that the DEI board or Charlesbank "orchestrated the trade secret misappropriation" as alleged by ADS. ADS also noticed the deposition of Directed LLC's current CEO, Robert Struble, but cancelled the deposition the day before it was scheduled.

ADS started this case, with hyperbolic public statements about DEI's hacking into ADS's servers and unauthorized access to ADS's software, for example:

- "DEI had <u>systematically hacked into ADS's server</u> to take the 'key' solutions for unlocking the immobilizers of various makes and models of vehicles." (D.I. 107) (underlining added).

- "DEI's efforts to decap, scalp, copy, and misappropriate ADS's technology were a concentrated and planned effort straight from the top: Charlesbank." (D.I. 107.)

- "DEI resorted to <u>hacking ADS's server</u> to take keys and copy ADS's code instead of developing its own key solutions." (D.I. 104) (underlining added).

- "By the second half of 2015, DEI began the wholesale theft of ADS's technology because it was falling farther behind ADS in the marketplace… DEI tried to catch up by <u>hacking into ADS's server</u> to take ADS's firmware to compensate for its lack of innovation." (D.I. 110) (underlining added).

- "…Choe[]…sits at the top of the pyramid…Choe is believed to be the wizard behind DEI's curtain." (D.I. 110.)

Yet, these inflammatory allegations were never supported over the course of this litigation. Nonetheless, ADS filed the Complaint and pursued the allegations over the course of discovery. Defendants' summary judgment briefing relating to ADS's purported copyright infringement claims (D.I. 207) and alleged trade secret claims (*See* D.I. 217) also set forth a number of exemplary flaws in ADS's claims that merit

attorneys' fees. Defendants incorporate this briefing by reference. Further, ADS filed numerous frivolous discovery motions that caused Defendants unnecessary expense and evinced bad faith.

In a patent action, a court may also "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case is one that, under the totality of the circumstances, "stands out from others with respect to the substantive strength of a party's litigating position" or "the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). DEI seeks fees under Section 285 with respect to its counterclaims. DEI also seeks costs pursuant to Federal Rule of Civil Procedure 54. Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).

## IX.   ABANDONMENT OF ISSUES

No claims or affirmative defenses have been abandoned by the Parties, and Defendants are not abandoning any affirmative defenses at this time.

1    Dated: October 4, 2019                    Cooley LLP

2
                                               */s/ Matthew J. Brigham*
3                                              MATTHEW J. BRIGHAM (191428)
                                               (mbrigham@cooley.com)
4                                              SARAH B. MOORE (292974)
                                               (smoore@cooley.com)
5                                              3175 Hanover Street
                                               Palo Alto, CA  94304-1130
6                                              Telephone: (650) 843-5000
                                               Facsimile:  (650) 849-7400
7
                                               STEPHEN R. SMITH (*pro hac vice*)
8                                              (stephen.smith@cooley.com)
                                               SAMUEL K. WHITT (284770)
9                                              (swhitt@cooley.com)
                                               1299 Pennsylvania Avenue, NW, Suite 700
10                                             Washington, DC  20004-2400
                                               Telephone: (202) 842-7800
11                                             Facsimile:  (202) 842-7899

12                                             REBECCA L. TARNEJA (293461)
                                               (rtarneja@cooley.com)
13                                             1333 2nd Street, Suite 400
                                               Santa Monica, CA  90401
14                                             Telephone: (310) 883-6400
                                               Facsimile:  (310) 883-6500

15                                             Attorneys for Defendants and
16                                             Counterclaim-Plaintiffs
                                               DIRECTED ELECTRONICS CANADA
17                                             INC.; DEI HOLDINGS, INC. (AKA
                                               DIRECTED ELECTRONICS, INC.);
18                                             DIRECTED, LLC; JIM MINARIK;
                                               KEVIN DUFFY; ROBERT STRUBLE;
19                                             TAREK KUTRIEH; and MINAS
                                               MINASSIAN

20

21

22

23

24

25

26

27

28