R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-777-8348
Attorneys for Plaintiff,
Automotive Data Solutions, Inc.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUTOMOTIVE DATA SOLUTIONS, INC., a Canada Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>DIRECTED ELECTRONICS CANADA INC., a Canada Corporation; DEI HOLDINGS, INC. (AKA DIRECTED ELECTRONICS, INC.), a Florida Corporation; DIRECTED, LLC, a Delaware LLC, JIM MINARIK, an individual; KEVIN DUFFY, an individual; ROBERT STRUBLE, an individual; TAREK KUTRIEH, an individual; MINAS MINASSIAN, an individual,<br><br>        Defendants. | CASE NO. 2:18-cv-1560-GW-E<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**Hon. George H. Wu**<br>**Courtroom: 9D**<br><br>Pretrial Conference: October 21, 2019<br>Time: 8:30 a.m.<br><br>Trial Date:  November 5, 2019<br>Time:  9:00 a.m. |
| AND RELATED COUNTERCLAIMS AND COUNTERCLAIMS-IN-REPLY | |

TROJAN LAW OFFICES
BEVERLY HILLS

Pursuant to the Court's Order Granting Joint Motion to Extend Deadlines to File (1) Motions in *Limine* and (2) Memoranda of Contentions of Fact and Law (Dkt. #318), Plaintiff Automotive Data Solutions, Inc. ("ADS") respectfully submits this Memorandum of Contentions of Fact and Law.

## I.     SUMMARY OF ADS'S CLAIMS

### A.     Trade Secret Misappropriation (18 U.S.C. § 1836 et seq.)

ADS asserts that Defendants Directed Electronics Canada Inc., Dei Holdings, Inc. (aka Directed Electronics, Inc.), Directed, LLC, A Delaware LLC, Jim Minarik, Kevin Duffy, Robert Struble, Tarek Kutrieh, and Minas Minassian, (collectively, "DEI" or "Defendants") ███████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████

██████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████

### B.     Trade Secret Misappropriation (Cal. Civ. Code § 3426 et seq.)

ADS asserts that DEI misappropriated ADS's Trade Secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq.

### C.     Willful Trade Secret Misappropriation

ADS asserts that DEI willfully misappropriated ADS's Trade Secrets.

### D.     Copyright Infringement

ADS asserts that DEI infringed the following ADS Copyrights:

1. ADS's bootloader;

2. Computer code for Subaru, Honda, Mazda Immobilizer bypass solutions (collectively, "ADS's Copyrights").

TROJAN LAW OFFICES
BEVERLY HILLS

### F.     Patent Infringement

ADS asserts that DEI infringed claims 1-20 of U.S. Patent No. 9,702,780 ("'780 Patent") under 35 U.S.C. § 271(a) by making, using, selling, and/or offering to sell the accused products and services, including, but not limited to, ███████

███████████████████████████████████████████

███████████     ADS also asserts that DEI contributorily infringed and induced infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b) and (c).

### G.     Willful Patent Infringement

ADS asserts that DEI willfully infringed the '780 Patent by making, using, selling, and/or offering to sell the accused products and services, ███████

### H.     Trade Secret Misappropriation Remedies

Pursuant to 18 U.S.C. § 1836(b)(3)(B)-(C) and Cal. Civ. Code 3426.3, ADS seeks damages to compensate it for DEI's misappropriation of ADS's Trade Secrets, including damages for all losses and injuries and unjust enrichments caused by the misappropriation, as determined as of the time of the misappropriation, and exemplary damages for willful and malicious misappropriation. Pursuant   to   18 U.S.C. § 1836(b)(3)(A) and Cal. Civ. Code §3426.2, ADS also seeks injunctive relief, including a permanent injunction.

ADS is entitled to attorneys' fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D) and Cal. Civ. Code 3426.4 because DEI's misappropriation was willful and malicious.  ADS is also entitled to pre- and post-judgment interest and costs pursuant to 28 U.S.C. § 1961(a) and Cal. Civ. Code § 3288.

### I.     Copyright Infringement Remedies

ADS has elected to seek damages pursuant to 17 U.S.C. § 504(b) in the form of profits of the infringers and/or unjust enrichment.  See 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the

-2-

TROJAN LAW OFFICES
BEVERLY HILLS

infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). Upon the completion of the trial, ADS will also seek pre-judgment interest and a permanent injunction through post-trial motions.

### J.    Patent Infringement Remedies

Pursuant to 35 U.S.C. § 284, ADS seeks damages adequate to compensate it for DEI's infringement of claims 3 and 4 of the '780 Patent, including a reasonable royalty and enhanced damages for willful infringement.  Pursuant to 35 U.S.C. § 283, ADS also seeks injunctive relief, including a permanent injunction.  ADS is entitled to attorneys' fees pursuant to 35 U.S.C. § 285 because this is an exceptional case and is entitled to pre- and post-judgment interest and costs pursuant to 35 U.S.C. § 284 and 35 U.S.C. § 154(d).

## II.    ELEMENTS AND EVIDENCE IN SUPPORT OF ADS'S CLAIMS

### A.    Trade Secret Claims

#### 1.    Elements:  Trade Secret Misappropriation (18 U.S.C. § 1836)

To prove trade secret misappropriation under 18 U.S.C. § 1836 et seq., ADS must prove by a preponderance of the evidence that (1) ADS owned the Trade Secrets; (2) ADS's Trade Secrets were trade secrets at the time of misappropriation; (3) DEI misappropriated the Trade Secrets; (4) ADS was harmed, DEI was unjustly enriched, or both; (5) DEI's conduct was a substantial factor in causing harm to ADS or unjustly enriching DEI; and (6) ADS's Trade Secrets related to a product or service used in, or intended for use in, interstate or foreign commerce.

Possession of a trade secret is sufficient for a party to assert a trade secret misappropriation claim and satisfy the requirement of ownership and is defined as knowledge of the trade secret.

-3-

To prove that ADS's Trade Secrets were "trade secrets," ADS must prove that (1) at the time of misappropriation, ADS's Trade Secrets derived actual or potential independent economic value from not being generally known to and not being readily ascertainable through proper means by another who could obtain economic value from the disclosure or use of the information; and (2) ADS took reasonable measures to keep ADS's Trade Secrets secret until the time of misappropriation.

**Sources:**

18 U.S.C. §§ 1836, 1839; *Johnson Controls, Inc. v. Therma, LLC*, 2018 WL 6133674, at *4 (C.D. Cal. Aug. 17, 2018); *Direct Techs., Ltd. Liab. Co. v. Elec. Arts, Inc.*, 836 F.3d 91059, 1070-71 (9th Cir. 2016)); *Engelhard Indus., Inc. v. Research Inst. Corp.*, 324 F.2d 347, 353 (9th Cir. 1963); *DTS, Inc. v. Nero AG*, 2015 WL 12819179, at *3 (C.D. Cal. Apr. 6, 2015); *O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, Inc., 399 F. Supp. 2d 1064, 1075, 1088 (N.D. Cal. 2005), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007), *aff'd*, 221 F. App'x 996 (Fed. Cir. 2007); *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013); *GlobeRanger Corp. v. Software AG United States of Am.*, Inc., 836 F.3d 477, 498 (5th Cir. 2016); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 1001, 1028 (E.D. 6  Cal. 2011); *Vesta Corp. v. Amdocs Mgmt., Ltd.*, 2018 WL 4354301, at *21-23 (D. 7  Or. Sept. 12, 2018); *Kia v. Sims*, Case No. C08-1632MJP, D.I. 215 at 29 (W.D. 8   Wash. July 1, 2010); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 WHA, D.I. 2449 (N.D. Cal. Jan. 3, 2018); *WeRide Corp. v. Kun Huang*, 2019 WL 1439394, at *5 (N.D. Cal. Apr. 1, 2019); *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017); *DaimlerChrysler Servs. v. Summit Nat.*, 2006 WL 1420812, at *8 (E.D. Mich. May 22, 2006).

    **2.**    **Evidence: Trade Secret Misappropriation (18 U.S.C. § 1836 et seq.)**

###### a. Regarding ADS's trade secrets:

ADS will present evidence including, but not limited to:

• Evidence that ADS owns the ADS's Trade Secrets at issue, including, but not limited to, testimony from ADS's employees and contemporaneous documents.

• Evidence that ADS invested a large amount of employee time, financial resources, and computing power into developing ADS's Trade Secrets, including deciphering and understanding the inner workings of the cryptographic algorithms implemented in vehicle immobilizers by each automobile manufacturer.

• Evidence that ADS's understanding of these cryptographic keys and the algorithms that generated them allowed ADS to significantly modify them, in unique and proprietary ways, so that if the firmware on the ADS module were stolen, it would be of little use without ███████████████████████████████ ███████████.

• Evidence that ADS's Trade Secrets were not generally known, including ADS's cryptographic keys and algorithms on ████████████████ were not generally known.

• Evidence that ADS developed and implemented ADS's Trade Secrets, including technology and software that it ultimately named ██████.

• Evidence that ADS's Trade Secrets are extremely valuable in the aftermarket remote starter business, including ADS's comprehensive immobilizer bypass solutions.

• Evidence demonstrating that ADS's Trade Secrets had actual or potential value, including, but not limited to, the testimony of current and former ADS employees, and its experts.

• Evidence that ADS took reasonable efforts to keep secret ADS's Trade Secrets during the relevant period, including, but not limited to, testimony from ADS's employees and contemporaneous documents.

TROJAN LAW OFFICES
BEVERLY HILLS

•      Evidence that ADS protected ADS's Trade Secrets by limiting the number of downloads that could be installed on the physical product installed by the end-consumer.

•      Evidence that ADS computer code was loaded onto locked chip and encrypted chips.

•      Evidence that ADS protected the confidentiality of ADS's Trade Secrets, which include the confidentiality provisions of ADS's agreements with its employees.

•      Evidence of the duty of confidentiality imposed by Canadian law.

•      Evidence that ADS commissioned an outside security firm in 2013 to perform an audit of ADS websites and web services and produce a report on its findings.

**b.      Regarding DEI's acquisition, disclosure, or use of ADS's trade secrets through improper means:**

ADS will present evidence including, but not limited to:

•      Evidence demonstrating that DEI came up with a scheme to improperly acquire ADS's trade secrets for use in development of its DEI's own products.

•      ███████████████████████████████████████████████████
████████████████████████

•      Evidence that DEI bypassed ADS's security restrictions on its products and servers, including decapping and unlocking microchips on ADS's products.

•      Evidence that DEI downloaded immobilizer bypass solutions directly from ADS's servers using customized software based on ADS's computer code, such as ADS's bootloader.

•      Evidence that ███████████████████████████████████
█████████████████████████████████████████████████
██████████████████████████████████████████

•      Evidence that DEI intended to commercialize the process of accesses ADS's

TROJAN LAW OFFICES
BEVERLY HILLS

servers for the cryptographic keys.

• Evidence that DEI integrated ADS's Trade Secrets in DEI's products.

• Evidence that DEI used ADS's Trade Secrets for research and development of DEI's products and services.

• Evidence that DEI used ADS's Trade Secrets to research, develop and enhance aspects of its Key2GO services that support the DEI's products.

### 3. Elements:  Trade Secret Misappropriation (Cal. Civ. Code § 3426)

To prove trade secret misappropriation under Cal. Civ. Code § 3426 et seq., ADS must prove by a preponderance of the evidence that (1) ADS owned the Trade Secrets; (2) ADS's Trade Secrets were trade secrets at the time of misappropriation; (3) DEI, via improper means, used ADS's Trade Secrets; (4) ADS was harmed or DEI was unjustly enriched; (5) DEI's use was a substantial factor in causing ADS's harm or DEI's unjust enrichment.

To prove that ADS owns the information alleged to be a trade secret, ADS must prove that it possessed non-disclosed knowledge of the trade secrets and that the trade secrets remained secret.

To prove that ADS's Trade Secrets were "trade secrets," ADS must prove that ADS's Trade Secrets: (1) were secret, i.e., not of public knowledge or of generally knowledge in the trade or business; (2) derived actual or potential independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use; and  (3) were the subject of efforts that were reasonable under the circumstances to maintain their secrecy.

**Sources:**

Cal. Civ. Code § 3426; *Judicial Council of California Civil Jury Instructions* (2019 Ed.) ("CACI") 4401; *Cal. Evid. Code* § 115; *9th Cir. Jury Instructions* 1.6; *Cal. Civ. Code* § 3426.1(d); *CACI* 4402, 4403; *DVD Copy Control Assn., Inc. v. Bunner*, 116

TROJAN LAW OFFICES
BEVERLY HILLS

Cal. App. 4th 241, 251 (2004); *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 19 1665-66 (2003); *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 702 (9th Cir. 2017); *Ajaxo Inc. v. E\*Trade Grp. Inc.*, 135 Cal. App. 4th 21, 66 (2005) ("*Ajaxo I*"); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010); *DTM Research*, 245 F.3d at 332; *DaimlerChrysler*, 2006 WL 1420812, at \*8; *Bladeroom*, 219 F. Supp. 3d at 990.

### 4.    Evidence:  Trade Secret Misappropriation (Cal. Civ. Code § 3426 et seq.)

ADS will present the same evidence that it will present for its claim for trade secret misappropriation under 18 U.S.C. § 1836 et seq.

### 5.    Elements:  Willful Trade Secret Misappropriation

To prove willful trade secret misappropriation, ADS must prove that DEI acted willfully and maliciously.  "Willfully" means acting with a purpose or willingness to commit the act or engage in the conduct in DEI's position where such conduct was not reasonable under the circumstances at the time and not undertaken in good faith. "Maliciously" means acting with intent to cause injury or despicable conduct done with willful and knowing disregard for the rights of others.

**Sources:**

*CACI* 4411; 18 U.S.C. § 1836(b)(3)(C); *Cal. Civ. Code* § 3426.3.

### 6.    Evidence: Willful Trade Secret Misappropriation

ADS will present the same evidence that it will present for its claim for trade secret misappropriation under 18 U.S.C. § 1836 et seq.

### 7.    Elements:  Trade Secret Misappropriation Damages

If ADS proves that DEI misappropriated ADS's Trade Secrets, then ADS is entitled to recover damages for the actual loss caused by misappropriation and damages for unjust enrichment caused by misappropriation that are not addressed in computing damages for actual loss.  "[A]ctual losses include damages for injury in

-8-

TROJAN LAW OFFICES
BEVERLY HILLS

1   fact, including . . . the value of lost business opportunities," and can also reflect the

2   value of any unfair "head start" DEI gained through the misappropriation.  *Inteum*

3   *Co., LLC v. Nat'l Univ. of Singapore*, 371 F. Supp. 3d 864, 780 (W.D. Wash. 2019);

4   *see also Eagle Grp., Inc. v. Pullen*, 58 P.3d 292, 299 (Wash. Ct. App. 2002); Kia,

5   Case No. C08-1632MJP, Dkt. 215 at 29.

6        Actual loss is determined as of the time of misappropriation. DEI was unjustly

7   enriched if its misappropriation of ADS's Trade Secrets caused DEI to receive a

8   benefit that it otherwise would not have achieved.  The amount of unjust enrichment

9   is the value of DEI's benefit that would not have been achieved except for DEI's

10  misappropriation, which could include the value of ADS's Trade Secrets at the time

11  of misappropriation and/or the commercial advantage or head start DEI gained

12  through its use of the Trade Secrets.  The value of the benefit is measured at the time

13  of misappropriation. Future sales and profit projections may be properly considered

14  in determining the value of the benefit.  ADS may recover the value of its trade secrets

15  as unjust enrichment damages even where no actual profits exist by which to value

16  the worth to DEI of what DEI misappropriated.

17  **Sources:**

18       CACI 4409; CACI 4410; 18 U.S.C. § 1836(b)(3)(B); Cal. Civ. Code §

19  3426.3(a); Ajaxo I, 135 Cal. App. 4th at 61; *ADS, Inc. v. Emirates NBD Bank PJSC*,

20  2016 WL 7809699, at *13-15 (C.D. 24 Cal. June 8, 2016); *Unilogic, Inc. v.*

21  *Burroughs Corp.*, 10 Cal. App. 4th 612, 627-28 (1992); *Ajaxo Inc. v. E*Trade Fin.*

22  *Corp.*, 187 Cal. App. 4th 1295, 1305 (2010)  ("*Ajaxo  II*"); *Univ. Computing Co. v.*

23  *Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974); *Grove US LLC v. Sany*

24  *Am. Inc.*, 2019 WL 969814, at *4-5 (E.D. Wis. Feb. 28, 2019); *see also Steves &*

25  *Sons, Inc. v. JELD- WEN, Inc.*, 2018 WL 2172502, at *6-7 (E.D. Va. May 10, 2018);

26  *Univ. Computing*, 504 F.2d at 536; *Cieminski v. BP Canada Energy Mktg.*, 2007 WL

27  4952727 (S.D. Ohio 2007).

28

TROJAN LAW OFFICES
BEVERLY HILLS

-9-

### 8.      Evidence:  Trade Secret Misappropriation Damages

ADS will present evidence including, but not limited to:

•      Evidence that DEI's misappropriation of ADS's Trade Secrets caused actual harm to ADS by, among other things, stealing its trade secrets and harming its sales.

•      Testimony by ADS's financial expert, Peter Hess, of a conservative calculation of the harm suffered by ADS is ███████████████████ in damages, exclusive of punitive or exemplary damages, fees and costs.

•      Evidence showing that the DEI was unjustly enriched as a result of its use of ADS's Trade Secrets for research and development of its products.

•      Evidence that during the time DEI used the ADS's Trade Secrets, DEI would not have been able to compete for sales against ADS with lesser availability of immobilizer bypass solutions.

•      Evidence that DEI'S coverage of immobilizer solutions depended on its misappropriation of ADS's trade secrets.

•      Alternatively, evidence demonstrating the amount of a reasonable royalty.

•      The foregoing documents and testimony, showing that the DEI's misconduct was willful and malicious.

### 9.      Elements:   Trade   Secret   Exemplary   Misappropriation Damages

If ADS proves that DEI willfully and maliciously misappropriated its Trade Secrets, the Court may award exemplary damages of up to two times the amount of the damages awarded for trade secret misappropriation.

**Source**:

18 U.S.C. § 1836(b)(3)(C); Cal. Civ. Code § 3426.3.

### 10.     Evidence:    Trade   Secret   Misappropriation   Exemplary Damages

ADS will present evidence including, but not limited to:

TROJAN LAW OFFICES
BEVERLY HILLS

- Evidence that includes internal correspondence at DEI regarding its willful misappropriation of ADS's Trade Secrets;

- Evidence that ADS will rely on for claims for trade secret misappropriation and trade secret misappropriation damages claims.

**11.    Elements:  Trade Secret Misappropriation Injunctive Relief**

The Court may grant an injunction to prevent any actual or threatened misappropriation.

**Sources**:

18 U.S.C. § 1836(b)(3)(A); Cal. Civ. Code § 3426.2.

**12.    Evidence:  Trade Secret Misappropriation Injunctive Relief**

ADS will present evidence described herein, including the evidence that ADS will rely on for its trade secret misappropriation claim.

**13.    Elements:  Trade Secret Misappropriation Attorney's Fees and Costs**

A court may award reasonable attorney's fees and costs to the prevailing party if a claim of misappropriation is made in bad faith, which may be established by circumstantial evidence; if a motion to terminate injunction is made or opposed in bad faith; or if the trade secret was willfully and maliciously misappropriated.

**Sources:**

28 U.S.C. § 1836(b)(3)(D); Cal. Civ. Code 3426.4.

**14.    Evidence:  Trade Secret Misappropriation Attorney's Fees and Costs**

ADS will present evidence that includes, but is not limited to, documents regarding ADS's attorneys' fees and costs in litigating this case and the evidence that ADS will rely on for its claims for trade secret misappropriation and damages and exemplary damages.

**15.    Elements:  Trade Secret Pre- and Post-Judgment Interest and**

TROJAN LAW OFFICES
BEVERLY HILLS

Costs

Interest shall be allowed on any money judgment in a civil case recovered in a district court.

**Sources**:

28 U.S.C. § 1961(a); Cal. Civ. Code § 3288.

### 16.    Evidence:  Trade Secret Pre- and Post-Judgment Interest and Costs

ADS will present evidence that includes the evidence it will rely on for its claim for trade secret misappropriation damages.

### B.    Copyright Infringement Claims

### 1.    Elements: Copyright Infringement

To establish its claim for copyright infringement, ADS has the burden of proving that: (1) ADS is the owner of a valid copyright; and (2) DEI copied original elements from the copyrighted work.

To prove ownership of a valid copyright, ADS must show that: (1) the work is original; and (2) ADS is the creator of the work or received a transfer of the copyright. To show originality, ADS has the burden of proving that its copyrighted work was created (1) independently by the author, that is, the author did not copy it from another work; and (2) by use of at least some minimal creativity.

Canadian copyright law is substantially similar to United States copyright law. Like in the United States, under Canadian Law, what is required to attract copyright protection in the expression of an idea is an exercise of skill and judgment.

In Canada, like the United States, copyright ownership of a work created by an employee in the course of their employment belongs to the employer, unless there is a verbal or written agreement otherwise.  According to the Canadian Copyright Act, "[w]here the author of a work was in the employment of some other person under a contract of service or apprenticeship and the work was made in the course of

-12-

his employment by that person, the person by whom the author was employed shall, in the absence of any agreement to the contrary, be the first owner of the copyright."

If ADS proves originality and ownership, the burden shifts to Defendants to show that (1) the work is not original; or (2) ADS is not the creator of the work nor received a transfer of the copyright.

To prove copying, ADS may provide direct evidence of copying or may show: (1) that DEI had access to the copyrighted work; and (2) that there are substantial similarities between the DEI's computer code and the copyrighted work.

**Sources:**

Ninth Circuit Manual of Model Jury Instructions: Civil §§ 17.0 (Plaintiff's Burden of Proof, Proof of Copying), 17.5 (Ownership of Copyright), 17.13 (Originality), 17.16 (Access and Substantial Similarity) (2016); *Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 639–40 (S.D.N.Y. 2017) (*citing CCH Canadian Ltd. v. Law Society of Upper Canada*, [2004] 1 S.C.R. 339, para. 22 (Can.)) ("[I]n Canada, as in the United States, Copyright protection does not extend to facts or ideas, but is limited to the expression of ideas."); Canadian Copyright Act, R.S.C., ch. C-42, § 6 (1985).

**2.     Evidence:  Copyright Infringement**

**a.     Regarding ADS's Copyrights**

ADS will present the same evidence that it will present for its claim for trade secret misappropriation under 18 U.S.C. § 1836 et seq.  ADS will also present evidence including, but not limited to:

•     Evidence that ADS's employees independently authored the copyrights at issue in the course and scope of their employment.

•     ██████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████

•     Evidence that ADS's employees have created original programming to add

TROJAN LAW OFFICES
BEVERLY HILLS

new functionalities to facilitate production, support weblink mobile secure authentication and also support newer hardware with multiple microcontrollers to the bootloader.

• Evidence that ADS's employees created original content by analyzing computer code for immobilizers in vehicles to create its own unique computer code to bypass vehicle immobilizers.

### b. Regarding DEI's Copyright Infringement:

ADS will present evidence including, but not limited to:



### 3. Elements: Copyright Infringement Damages

To recover infringer's profits, ADS has the burden of showing that "the infringement at least partially caused the profits that the infringer generated as a result of the infringement."

Upon satisfaction of this standard, the burden then shifts to Defendants to prove: (1) their deductible expenses; and (2) what percentage of their profits was not attributable to the infringing work.

**Sources**:

17 U.S.C. § 504(b); Ninth Circuit Manual of Model Jury Instructions: Civil § 17.33 (Defendant's Profits – Comment) (2016) (citing *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) ("This appeal requires us to apply the fundamental standard articulated in our decision in *Mackie*: that a copyright infringement plaintiff seeking to recover indirect profit damages 'must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.'")).

### 4.    Evidence:  Copyright Infringement Damages

ADS will present evidence including, but not limited to:

• Evidence that DEI's infringement of ADS's copyrights caused actual harm to ADS by, among other things, harming its sales.

• Testimony by ADS's financial expert, Peter Hess, of a conservative calculation of the harm suffered by ADS is up to approximately ███████ in damages, exclusive of fees and costs.

• Evidence showing that the DEI was unjustly enriched as a result of its use of ADS's trade secrets for research and development of its products.

• Evidence that during the time DEI used the ADS's copyrights, DEI would not have been able to compete for sales against ADS with lesser availability of immobilizer bypass solutions.

• Evidence that DEI's coverage of immobilizer solutions depended on the infringement of ADS's copyrights.

### C.    Patent Claims

### 1.    Elements:  Direct Patent Infringement

TROJAN LAW OFFICES
BEVERLY HILLS

To prove direct patent infringement at trial, ADS must prove by a preponderance of the evidence that DEI made, used, sold, or offered for sale in the United States a product or service covered by a claim of the '780 Patent during the term of the '780 Patent.

**Source:**

35 U.S.C. § 271(a); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).

## 2. Evidence:  Direct Patent Infringement

### a. Regarding ADS's Patent

ADS will present evidence of its ownership, enforceability, and presumptive validity of the '780 Patent.

### b. Regarding Infringement of ADS's Patent

ADS will present evidence that DEI's accused products infringe the '780 patent, including but not limited to the following:





### 3. Elements: Contributory Patent Infringement

To prove contributory infringement at trial, ADS must provide direct infringement of the '780 Patent, DEI supplied an important component of the infringing part of the product or method claimed in the '780 Patent, the component is not a common component suitable for non-infringing use; and DEI supplied the component with the knowledge of the '780 Patent and knowledge that the component

-17-

was especially made or adapted for use in an infringing manner.

**Sources:**

N.D. Model Patent Jury Instructions 3.6; 35 U.S.C. § 271(c); *PharmaStem Therapeutics, Inc. v. ViaCell, Inc. et. al*., 491 F.3d 1342, 1356-58 (Fed. Cir. 2007); *Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476 (1964); *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1303 (Fed. Cir. 2006); *Mentor H/S, Inc. v. Med. Device Alliance, Inc*., 244 F.3d 1365 (Fed. Cir. 2001); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990); *Preemption Devices, Inc. v. Minn. Mining & Mfr. Co*., 803 F.2d 1170, 1174 (Fed. Cir. 1986).

### 4.    Evidence: Contributory Patent Infringement

ADS will present the evidence that ADS will rely on for its claim for patent infringement.  ADS will also present evidence including, but not limited to the following:

•    Evidence that DEI supplied the accused products to its customers through sales of the products.

•    Evidence that DEI facilitated the installation of the products to its customers' vehicles.

•    Evidence that provided detailed instructions for the installation of DEI's products to its customers' vehicles.

•    Evidence that that DEI's products can only be used for infringing purposes and have no alternative uses.

•    Evidence that DEI had notice of the '780 Patent since at least November 7, 2014.

•    Evidence that DEI sold its products knowing the products infringed the '780 Patent.

### 5.    Elements:  Induced Patent Infringement

To prove induced infringement at trial, ADS must provide direct infringement

TROJAN LAW OFFICES
BEVERLY HILLS

of the '780 Patent, DEI intentionally took action that actually induced direct infringement, DEI was aware of the '780 Patent, and knew that the acts it was causing would infringe the patent. DEI may be considered to have known that the acts it was causing would infringe the '780 Patent if DEI subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

**Sources:**

N.D. Model Patent Jury Instructions 3.7; 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc*., 135 S.Ct. 1920, 1928-31 (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A*., 131 S.Ct. 2060, 2070-71 (2011).

### 6.     Evidence:  Induced Patent Infringement

ADS will present evidence that includes the evidence that ADS will rely on for its claim for patent infringement and contributory patent infringement.

### 7.     Elements:  Willful Patent Infringement

To prove willful infringement, ADS must prove by a preponderance of the evidence that DEI willfully or deliberately infringed a valid and enforceable claim of the patent, i.e., intentionally ignored or recklessly disregarded that claim. The subjective willfulness of an infringer may warrant a finding of willfulness. The willfulness determination is based on all facts surrounding infringement, including whether DEI acted consistently with the standards of behavior for its industry; intentionally copied a product covered by the '780 Patent; reasonably believed it did not infringe or the patent was invalid; made a good-faith effort to avoid infringing the '780 Patent; and tried to cover up infringement.

**Sources**:

*Halo Elecs., Inc. v. Pulse Elecs.*, Inc., 136 S. Ct. 1923, 1934 (2016); *Fed. Cir. Bar Ass'n Model Patent Jury Instructions* (July 2016 Ed.) ("FBA Model Inst.") § B.3.10;

-19-

*Genes Indus. Co. v. Custom Blinds & Components Inc.*, Case No. CV15-0476 AG (Ex), D.I. 123 at 38 (C.D. Cal. Oct. 11, 2017); *Aten Int'l Co., Ltd. v. Uniclass Tech. Co., Ltd., et al.*, Case No. CV15-4424 AG (AJWx), D.I. 448 at 58 (C.D. Cal. Oct. 10, 2017).

### 8.   Evidence:  Willful Patent Infringement

ADS will present evidence that includes the evidence that ADS will rely on for its claim for patent infringement and contributory patent infringement.

### 9.   Elements:  Patent Infringement Damages

ADS is entitled to damages adequate to compensate it for the infringement. The damages award should put ADS in the financial position it would have been in had the infringement not occurred and must be no less than a reasonable royalty.   A reasonable royalty is the money amount that ADS and DEI would have agreed on as a fee for use of the invention prior to when infringement began, and is determined based on the 15-factor analysis set forth in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  ADS is entitled to damages for the period from November 2014 through trial.

**Sources**:

35 U.S.C. § 284; FBA Model Inst. § B.6.1.  Pursuant to 35 U.S.C. § 286;

### 10.   Evidence:  Patent Infringement Damages

Evidence including, but not limited to:

• Evidence that includes DEI's sales documents and related testimony from DEI fact witnesses.

• Evidence of ADS and DEI's license agreements and related documents.

• Evidence of DEI's planning, preparation, technical, financial, marketing, and sales documents and internal e-mails relating to the accused products.

• Testimony by ADS's financial expert, Peter Hess, of a conservative calculation of the harm suffered by ADS is up to approximately ███████ damages,

TROJAN LAW OFFICES
BEVERLY HILLS

exclusive of fees and costs.

•     Evidence showing that reasonable royalty patent damages total.

### 11.    Elements:  Patent Infringement Enhanced Damages

If ADS proves that DEI willfully infringed one or more of the '780 Patent claims, the Court may award increased damages of up to three times the amount found or assessed.

**Sources**:

35 U.S.C. § 284; Halo, 136 S. Ct. at 1928-29.

### 12.    Evidence:  Patent Infringement Enhanced Damages

ADS will present evidence that includes the evidence ADS will rely on for its claim for damages for patent infringement.

### 13.    Elements:  Patent Infringement Injunctive Relief

In evaluating the need and scope of injunctive relief, the Court must balance whether (1) ADS will suffer irreparable injury absent injunctive relief; (2) remedies available at law are inadequate to compensate for that injury; (3) a remedy in equity is warranted, considering the balance of hardships; and (4) the public interest  would not  be  disserviced  by  a  permanent  injunction.

**Sources**:

*eBay Inc.  v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 14.    Evidence: Patent Infringement Injunctive Relief

ADS will present evidence that includes the evidence ADS will rely on for its claim for damages for patent infringement, including evidence that injunctive relief is in the public interest.

### 15.    Elements:  Patent Infringement Attorneys' Fees and Costs

If the Court determines that this is an exceptional case, then it may award reasonable attorney fees to the prevailing party.

**Sources:**

TROJAN LAW OFFICES
BEVERLY HILLS

35 U.S.C. § 285; *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557 (2014).

### 16. Evidence: Patent Infringement Attorneys' Fees

ADS will present evidence including evidence of willful patent infringement and the evidence that ADS will rely on for its patent infringement damages claim.

### 17. Elements: Patent Infringement Pre- and Post-Judgment Interest and Costs

ADS is entitled to interest and costs as fixed by the Court.

**Sources:**

35 U.S.C. § 284; FED. R. CIV. P. 54(d); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983); *Nickson Indus., Inc. v. Rol Mfg. Co.*, Ltd., 847 F.2d 795, 800 (Fed. Cir. 1988); *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

### 18. Evidence: Patent Pre- and Post-Judgment Interest and Costs

ADS will present evidence that includes the evidence that ADS will rely on for its claim for damages for patent infringement.

## IV. SUMMARY OF DEI'S AFFIRMATIVE DEFENSES

### A. DEI's Contention That Trade Secrets Were Readily Ascertainable

DEI asserts that all ADS's information used by DEI to develop its products were readily ascertainable and generally known to the public due to reverse engineering. DEI also asserts that ADS's copyright claims preempt the trade secret misappropriation claims.

### B. Defenses to Patent Infringement Claims

DEI asserts that the asserted claims of the '780 Patent are invalid and/or unenforceable under 35 U.S.C. §§ 101, 102, 103, and/or 112.

### B. Defenses to Copyright Infringement Claims

DEI contends that ADS's copyright claim is barred by the doctrine of fair use.

## V.   ELEMENTS   AND   EVIDENCE   IN   OPPOSITION   TO   DEI'S AFFIRMATIVE DEFENSES

### A.   Trade Secret Affirmative Defenses

#### 1.   Elements:  Reverse Engineering

DEI must prove that ADS's Trade Secrets were readily ascertainable by proper means at the time of the alleged use.  In general, information is readily ascertainable if it can be obtained without significant difficulty, effort, or expense.

**Sources:**

Cal. Civ. Code § 3426.1(d)(1); CACI 4420; *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal. 4th 864, 899 (2003).

#### 2.   Evidence:  Reverse Engineering

ADS will present evidence that includes the evidence supporting its claims for trade secret misappropriation.

#### 3.   Elements:  Preemption

Courts have regularly held that the element of secrecy in a trade secret misappropriation claim constitutes an extra element that changes the nature of the copyright action.

**Sources:**

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1090 n.13 (9th Cir. 1989); *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *see also*, 1 Melvin B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01, at 1–39 to 140 (1999) ("Actions for disclosure and exploitation of trade secrets require a status of secrecy, not required for copyright, and hence, are not pre-empted. This conclusion applies whether or not the material subject to the trade secret is itself copyrightable.");  *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4128484, at *5 (N.D.

Cal. July 8, 2015) (finding plaintiff's trade secret misappropriation claim is not preempted by the Copyright Act because plaintiff sufficiently "pleaded facts showing that its source code was maintained as a secret").

### 4. Evidence: Preemption

ADS will present evidence that includes the evidence supporting its claims for trade secret misappropriation, including evidence that ADS's software and bootloader were kept as a secret as discussed above.

### B. Patent Affirmative Defenses

### 1. Elements: Patent Infringement

Courts apply a two-part test for infringement: "First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

"Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

### 2. Evidence: Patent Infringement

ADS will present the same evidence that it will present for its claim for patent infringement.

### 3. Elements: Patent Invalidity

DEI bears the burden of proof on patent invalidity by clear and convincing evidence.    35 U.S.C. § 282; *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554,

TROJAN LAW OFFICES
BEVERLY HILLS

-24-

1563 (Fed. Cir. 1997).

Patent Eligibility: DEI must prove that the claims are directed to patent-ineligible concepts and that the elements of each claim, taken individually and as an ordered combination, fail to transform the nature of the claim into a patent-eligible application. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). For each step, DEI must prove that the claim elements involve only well-understood, routine, and conventional activity. *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 751 (Fed. Cir. 2019); *Berkheimer*, 881 F.3d at 1367.

Anticipation: DEI must prove that each and every claim element is disclosed in a single prior art reference, arranged as claimed. *Summit, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015); *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334-35 (Fed. Cir. 2008).

Obviousness: DEI must prove that the differences between the claimed subject matter and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art ['POSA'] to which said subject matter pertains." 35 U.S.C. § 103(a); *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting 35 U.S.C. § 103(a)). If DEI relies on multiple references, DEI must also prove that a POSA at the time of invention would have been motivated to combine the elements in the way that the claimed invention does.*KSR*, 550 U.S. at 418-19.

Secondary considerations can weigh in favor of non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S. Ct. 684, 694, 15 L. Ed. 2d 545 (1966).

Written Description: DEI must prove that the specification does not "reasonably convey[] to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

Enablement: DEI must prove that the specification fails to "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use" the claimed invention without undue experimentation. *MagSil Corp. v. Hitachi Glob. Storage Techs.*, Inc., 687 F.3d 1377, 1380 (Fed. Cir. 2012); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003). The enablement determination is performed as of the effective filing date of the patent. *Magsil*, 687 F.3d at 1380.

Indefiniteness: DEI must prove that the patent claim, read in light of the specification and the prosecution history, fails to inform, with reasonable certainty, those skilled in the art about the scope of the invention. *Bombardier Rec. Prod., Inc. v. Arctic Cat Inc.*, Civil No. 12-2706, D.I. 1064 at 28 (D. Minn. Dec. 6, 2017).

## 2. Evidence: Patent Validity

ADS will present the testimony of ADS and DEI fact witnesses and its technical experts, and documents supporting the fact witnesses' testimony and experts' opinions, including the '780 Patent; documents relating to commercial success and industry praise of the claimed invention. The evidence will establish the following:

Evidence regarding **Patent Eligibility**, including, but not limited to:

• Evidence that at least the following elements of the '780 Patent were not well-understood, routine, or conventional:

1. Process of "extracting key data from a security device located in the vehicle using the "first computer program" – Claim element 1.c of the '780 Patent

2. Process of "using a second computer program not installed on the external module

3. Analyzing and processing the key data and generating a third computer

4. A program allowing the external module to communicate with the security device"- Claim element 1.e of the '780 Patent

TROJAN LAW OFFICES
BEVERLY HILLS

5. Process of "transferring the generated third computer program to the external module"- Claim element 1.f of the '780 Patent

6. A "key extraction server configured to extract a key from key data"- Claim element 15.b of the '780 Patent

7. Process of "generat[ing] a new program based on: (1) information retrieved from a data source of computer programs; (2) the key data"- Claim element 15.c.i of the '780 Patent

Evidence regarding **Anticipation**, including but not limited to:

• Evidence that one prior art reference does not inclusively teach at least the following elements:

1. A computer program is transferred to an external module

2. Key data is extracted "from a security device located in the vehicle";

3. Key data is transferred to the same computer device used to initially transfer the first computer program.

4. Generation of a new program (i.e. the third computer program) is generated.

Evidence regarding **Obviousness**, including but not limited to:

• Evidence that a combination of prior art references does not inclusively teach at least the following elements:

5. A computer program is transferred to an external module

6. Key data is extracted "from a security device located in the vehicle";

7. Key data is transferred to the same computer device used to initially transfer the first computer program.

8. Generation of a new program (i.e. the third computer program) is generated.

ADS will also offer evidence of **Secondary Considerations**, including that the '780 Patent addressed a long-felt need for a universal remote starters that could be remotely programmed to vehicle security;  ADS's products incorporating the claimed invention have enjoyed commercial success; and that DEI has copied the

claimed invention.

Evidence regarding **Written Description, Enablement, and Indefiniteness**, including but not limited to documents and testimony that given the general knowledge of the art and in light of the specification of the '780 Patent, a person of ordinary skill in the art (POSITA) would be able to practice the teachings of the '780 Patent, the claims were enabled, and not indefinite, including at least the following:

1. A POSITA would understand that the specification of the '780 Patent explains what is meant by "at least partially installing."

2. A POSITA and the specification of the '780 Patent explains the term "computer program".

## C. Copyright Affirmative Defense of Fair Use

### 1. Elements: Fair Use

DEI has the burden of establishing fair use based upon the following factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

**Sources:**

Ninth Circuit Manual of Model Jury Instructions: Civil § 17.21 (Fair Use) (2016).

### 4. Evidence: Not Fair Use

In addition to the evidence cited above in conjunction with its claim and ADS's other affirmative defenses, ADS will present evidence to support the following facts, which establish that the doctrine of fair use does *not* apply:

(1) DEI is a for-profit businesses.

(2) ADS and DEI are direct competitors in the aftermarket remote starter industry.

TROJAN LAW OFFICES
BEVERLY HILLS

(3)    The ADS's copyrights includes computer code created for and used by ADS for the purpose of generating revenue.

(4)    The ADS's copyrights used by DEI are not used for any nonprofit or educational purpose.

(5)    By infringing on ADS's copyrights, DEI has caused ADS to lose control over the dissemination, interpretation, and use of the code, and thereby have decreased the value of the code to ADS.

(7)    A side-by-side analysis of ADS's Copyrights and DEI's infringing code shows that DEI copied directly from ADS's Copyrights, not the original vehicle manufacturer.

## VI.   SUMMARY OF DEI'S COUNTERCLAIMS



The '185 patent, '386 patent, and '400 patent are DEI's "asserted patents".

## VII.  ELEMENTS REGARDING DEI'S COUNTERCLAIMS

DEI bears the burden of proving patent infringement on the '185, '386, and

'400 patents. *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis in original). ("[I]t is axiomatic that the *patentee* bears the burden of proving infringement.")   Infringement must be proven by a preponderance of the evidence. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).  To determine whether a patentee has met this burden, courts apply a two-part test: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in DEIion at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

"Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

## III.    KEY EVIDENCE IN OPPOSITION TO DEI'S COUNTERCLAIMS

ADS does not infringe DEI's asserted patents because ADS's accused products do not practice each and every element of the respective claims in DEI's asserted patents.   Moreover, DEI's asserted patents are invalid because the differences between the claimed inventions in the asserted patents and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention.  ADS will present evidence including at least the following:

### A.    Brief Description of Key Evidence for Noninfringement of the '185 Patent

Key evidence showing that ADS's accused products do not infringe claims 1-

TROJAN LAW OFFICES
BEVERLY HILLS

12 and 15-16 of the '185 patent includes but is not limited to the following:

- ADS's accused products do not "detect a first pulsed voltage pattern and a second pulsed voltage pattern" as required by the asserted claims of the '185 patent. ADS's accused products do not examine voltage patterns because they take snapshots of the voltage to detect discreet voltage values as confirmed by ADS's source code.

- ADS's accused products do not measure voltage frequency as required by the asserted claims of the '185 patent. ADS's accused products do not measure voltage frequency as evidenced by ADS's source code which shows that it measures values, not frequency, as indicated by the measurements made in units of volts.

**B.     Brief Description of Key Evidence for Noninfringement of the '386 Patent**

Key evidence showing that ADS's accused products do not infringe claims 1-7 of the '386 patent includes but is not limited to the following:

- ADS's accused products do not have "translucent key switches" as required by the asserted claims of the '386 patent. ADS's accused products possess opaque key switches.

- ADS's accused products do not have light sources beneath the key switches as required by the asserted claims of the '386 patent. ADS's accused products have light sources that are positioned adjacent to and not beneath the key switches.

**C.     Brief Description of Key Evidence for Noninfringement of the '400 Patent**

Key evidence showing that ADS's accused products do not infringe claims 1 and 14 of the '400 patent includes but is not limited to the following:

- ADS's accused products are not operative to exchange data in a plurality

TROJAN LAW OFFICES
BEVERLY HILLS

of modulation modes as required by the asserted claims of the '400 patent.  ADS's accused products are only configured in one modulation from the factory.

A "sophisticated consumer" would need specialized equipment and knowledge to modify ADS's accused products to be operative to exchange data in a plurality of modulation modes as required by the asserted claims of the '400 patent.

## IV.   SUMMARY OF ADS'S AFFIRMATIVE DEFENSES

### A.   Noninfringement of DEI's Asserted Patents



### B.   Invalidity of DEI's Asserted Patents

ADS asserts that DEI's asserted patents are invalid because the differences between the claimed inventions in the asserted patents and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention.

## V.   ELEMENTS   AND   EVIDENCE   REQUIRED   FOR   ADS'S

TROJAN LAW OFFICES
BEVERLY HILLS

## AFFIRMATIVE DEFENSES

### A.    Patent Noninfringement

#### 1.    Elements:  Patent Non-infringement

"[I]t is axiomatic that the *patentee* bears the burden of providing infringement." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis in original).   Infringement must be proven by a preponderance of the evidence.  *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004).  To determine whether a patentee has met this burden, courts apply a two-part test: "First, the claim must be properly construed to determine its scope and meaning.  Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

"Literal infringement requires the patentee to prove that the accused device contains each limitation of the asserted claim(s)." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

#### 2.    Evidence:  Patent Non-infringement

ADS will present evidence that includes the evidence it will present to support its opposition to DEI's claims of infringement.

### B.    Patent Invalidity

#### 1.    Elements:  Patent Invalidity

A patent claim is invalid for obviousness if the differences between the claims invention and the prior art are such that the subject matter as a whole would have been obvious to a person of ordinary skill in the art at the time of the invention.  35

U.S.C. § 103.  "[O]bviousness is a matter of law based on findings of underlying fact."  *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1085 (Fed. Cir. 2008).  The underlying factual considerations include: (1) the scope and content of the prior art, (2) differences between the prior art and the claims at issue, (3) the level of ordinary skill in the pertinent art, and (4) secondary considerations.  *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007).

Obviousness is to be judged under "an expensive and flexible approach" driven by "common sense."  *See KSR*, 550 U.S. at 415, 420-21; *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238-40 (Fed. Cir. 2010).  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR*, 550 U.S. at 416.  "[W]hen a patent simply arranges old elements with each performing the same function it had been to perform and yields no more than one would expect from such an arrangement, the combination is obvious."  *Id.* at 417 (internal quotation marks omitted).  Additionally, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success; it is likely the product not of innovation but of ordinary skill and common sense."  *Id.* at 421.

## 2.    Evidence:  Patent Invalidity

### a.    Brief Description of Key Evidence for Invalidity of the '185 Patent

A person of ordinary skill in the art would find the asserted claims of the '185 patent obvious in light of the following references:

- U.S. Patent No. 6,561,151 ("Wisnia")

- U.S. Patent No. 5,905,315 ("Lefebvre")

TROJAN LAW OFFICES
Beverly Hills

- U.S. Patent No. 5,806,488 ("Imberg")
- U.S. Patent No. 5,983,850 ("Vilou")
- U.S. Patent No. 8,112,185 ("Wu")
- U.S. Patent No. 5,349,931 ("Gottlieb")
- U.S. Patent No. 6,662,085 ("Chang")
- U.S. Patent No. 6,845,313 ("Hasegawa")
- U.S. Patent No. 4,892,073 ("Yamamoto")
- U.S. Patent No. 6,445,998 ("Ando")

b.     **Brief Description of Key Evidence for Invalidity of the '386 Patent**

A person of ordinary skill in the art would find the asserted claims of the '386 patent obvious in light of at least the following references and the common knowledge in the art:

- U.S. Patent No. 6,918,368 ("Nantz")
- U.S. Patent No. 6,424,056 ("Irvin")
- U.S. Patent No. 6,127,961 ("Stacy")
- U.S. Patent No. 7,109,908 ("Griesau")

c.     **Brief Description of Key Evidence for Invalidity of the '400 Patent**

A person of ordinary skill in the art would find the asserted claims of the '400 patent obvious in light of at least the following references and the common knowledge in the art:

- U.S. Patent No. 6,075,454 ("Yamasaki")
- U.S. Patent No. 5,652,599 ("Pitta")
- U.S. Patent No. 6,650,236 ("Ghabra")
- U.S. Patent No. 6,918,368 ("Nantz")

TROJAN LAW OFFICES
BEVERLY HILLS

-35-

1
2

### C.    Patent Infringement Enhanced Damages

#### 1.    Elements:  Patent Infringement Enhanced Damages

3
4
5
6
7
8
9
10
11

The punitive nature of enhanced damages requires that the Court "reserve punishment for egregious cases typified by willful misconduct." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016).  Egregious behavior is behavior that is "willful, wanton, malicious, bad-faith deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Id*. at 1932.  Indeed, one of the most important factors in determining if enhanced damages are merited is whether the infringer "investigated the patent and formed a good faith belief that it was invalid or that it was not infringed." *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011).

12
13
14
15
16

Preponderance of evidence standard, rather than clear and convincing evidence standard, applied when evaluating sufficiency of evidence of willful infringement as predicate to enhanced damages award in patent infringement action.  *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 143, 202 L. Ed. 2d 34 (2018)

17

#### 2.    Evidence:  Patent Infringement Enhanced Damages

18
19
20
21
22

ADS and counsel for ADS reviewed DEI's asserted patents and independently formed the good faith belief that ADS's accused products do not infringe the asserted patents because the accused products do not practice each and every limitation recited in the claims.  Moreover, both ADS and counsel for ADS formed the good faith belief that DEI's asserted patents are invalid for being obvious in light of the prior art.

23
24

## VII.  SUMMARY  OF  ADS'S  COUNTERCLAIMS-IN-REPLY  AND  DEI'S AFFIRMATIVE DEFENSES THERETO

25
26
27

ADS asserts counterclaims-in-reply of patent noninfringement, patent invalidity, and no enhanced damages for patent infringement.  (*See* congruent sections IV and V above.)

28

TROJAN LAW OFFICES
BEVERLY HILLS

DEI asserts affirmative defenses of Patent noninfringement, patent validity, and other similar affirmative defenses as discussed above. (*See* congruent section V above.)

## VIII.  BIFURCATION OF ISSUES

ADS does not request bifurcation.

## IX. JURY TRIAL

ADS seeks a trial by jury on all issues so triable.    The following issues are triable to a jury as a matter of right:

- Trade secret misappropriation under 18 U.S.C. § 1836 et seq.
- Trade secret misappropriation under Cal. Civ. Code § 3426 et seq.
- Willful trade secret misappropriation;
- Patent infringement under 35 U.S.C. § 271(a), (b), and (c)
- Willful patent infringement
- Copyright infringement
- Trade secret misappropriation damages
- Breach of contract damages
- Patent infringement damages
- Copyright infringement damages.

Non-jury issues that are to be tried by the Court include the following:

- Injunctive relief
- Exemplary damages for trade secret misappropriation
- Enhanced damages for willful patent infringement
- Attorneys' fees and costs
- Pre- and post-judgment interest and costs.

The issues to be tried by the Court should be argued after the jury trial.  A timely demand for jury trial has been made. (*See* Dkt. #1.)

## X.    ADS IS ENTITLED TO ATTORNEYS' FEES

ADS  should be awarded attorneys' fees under 18 U.S.C § 21 1836(b)(3)(D), Cal. Civ. Code § 3426.4, Cal. Civ. Proc. Code § 1021.5, and 35 U.S.C. § 285 because this is an exceptional case.

## XI.    ABANDONMENT OF ISSUES

TROJAN LAW OFFICES
BEVERLY HILLS

ADS has abandoned the following affirmative defenses to DEI's counterclaims:

- First Affirmative Defense (Failure To State A Claim)
- Fourth Affirmative Defense (Patent Misuse)
- Fifth Affirmative Defense (No Immediate Or Irreparable Injury)
- Sixth Affirmative Defense (Uncertainty)
- Seventh Affirmative Defense (No Damages)
- Eighth Affirmative Defense (Unjust Enrichment)
- Ninth Affirmative Defense (Estoppel)
- Tenth Affirmative Defense (Unclean Hands)
- Eleventh Affirmative Defense (Lack Of Causation)
- Twelfth Affirmative Defense (Failure To Mitigate Damages)
- Thirteenth Affirmative Defense (Limitation On Damages)
- Fourteenth Affirmative Defense (Speculative Damages).

Respectfully submitted,

TROJAN LAW OFFICES
by

October 4, 2019                          /s/R. Joseph Trojan
                                          R. Joseph Trojan
                                          Attorneys for Plaintiff ADS

TROJAN LAW OFFICES
BEVERLY HILLS

-38-